**SAVE OUR SPRINGS ALLIANCE, INC., and William G. Bunch, Appellants,**

v.

**LAZY NINE MUNICIPAL UTILITY DISTRICT, by and through its BOARD OF DIRECTORS, and C.A. Elder, Vincent Huebinger, Bill Simpson, and Cord Shiflet, in their Official Capacities as Lazy Nine Municipal Utility District Board Members, Appellees.**

No. 06–05–00058–CV.

Court of Appeals of Texas, Texarkana.

Submitted April 18, 2006.

Decided June 1, 2006.

Opinion Overruling Motion for Rehearing July 18, 2006.

Max Renea Hicks, Sarah M. Baker, Austin, for appellant.

John J. McKetta III, Robin A. Melvin, Graves, Dougherty, Hearon & Moody, PC, Austin, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Save Our Springs Alliance, Inc. (SOS) brought suit against Lazy 9 Municipal Utility District (Lazy 9), challenging the constitutionality of the legislative bill creating that district.[1] SOS advanced, in essence, two arguments as to why the bill was unconstitutional: 1) the bill's author provided inadequate notice of the bill, and 2) the bill makes an unconstitutional delegation of authority to Lazy 9 by allowing Lazy 9 to create additional districts within its area. In response, Lazy 9 argues that the formation of the district could only be challenged in a quo warranto proceeding and that the enrolled bill rule bars the admission of extrinsic evidence.

Following a bench trial, the trial court found the bill to be constitutional, awarded $294,000.00 in attorney's fees to Lazy 9, and sanctioned SOS' attorney, William G. Bunch, in the amount of $5,000.00 for filing a frivolous lawsuit and for filing a lawsuit for an improper purpose. SOS and Bunch appeal, raising six points of error challenging the trial court's exclusion of evidence based on the quo warranto doctrine and the enrolled bill rule, finding the delegation of authority to Lazy 9 constitutional, awarding attorney's fees to Lazy 9, and assessing sanctions against Bunch.

We conclude the quo warranto doctrine did not prevent SOS from bringing this suit. The trial court did not err in excluding evidence relating to the lack of notice because the enrolled bill rule bars the introduction of such evidence. Even if the trial court erred in excluding evidence re-

lating to whether the bill contains an unconstitutional delegation, SOS has failed to show that the evidence probably caused the rendition of an improper judgment. Last, we conclude the trial court did not err in awarding attorney's fees to Lazy 9 but did err in assessing sanctions against Bunch. We, therefore, affirm in part and reverse in part.

## Background

Article XVI, Section 59 of the Texas Constitution authorizes the Legislature to create conservation and reclamation districts. TEX. CONST. art. XVI, § 59. The Texas Legislature has provided for the creation of a number of kinds of conservation and reclamation districts. Of the numerous types of districts, municipal utility districts are the most popular. See 36A DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 46.71, 228–29 (2002). Such districts are generally created to provide water, sewer, drainage, and other services.

Municipal utility districts may be created in one of two ways: by the Texas Commission on Environmental Quality (TCEQ) or by a specific act of the Texas Legislature. See 36A DAVID B. BROOKS, TEXAS PRACTICE: COUNTY AND SPECIAL DISTRICT LAW § 46.6, 124–25 (2002). Municipal districts created by the TCEQ are called "general law districts," and municipal utility districts created by a specific act of the Texas Legislature are called "special law districts." See id. at 123. The Legislature is not limited in the manner in which a special law district is organized or governed. Id. Before the creation of a district, notice must be given of such intention. Section 59(e) of the Texas Constitution provides as follows:

---

1. This appeal was transferred to this Court from the Austin Court of Appeals by order of the Texas Supreme Court as part of the Texas Supreme Court's docket equalization program.

No law creating a conservation and reclamation district shall be passed unless, at the time notice of the intention to introduce a bill is published as provided in Subsection (d) of this section, a copy of the proposed bill is delivered to the commissioners court of each county in which said district or any part thereof is or will be located and to the governing body of each incorporated city or town in whose jurisdiction said district or any part thereof is or will be located. Each such commissioners court and governing body may file its written consent or opposition to the creation of the proposed district with the governor, lieutenant governor, and speaker of the house of representatives. Each special law creating a conservation and reclamation district shall comply with the provisions of the general laws then in effect relating to consent by political subdivisions to the creation of conservation and reclamation districts and to the inclusion of land within the district.

TEX. CONST. art. XVI, § 59(e).

Lazy 9 was created by the Texas Legislature through House Bill 3565 during the 78th Legislature's regular session. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 1158, 2003 Tex. Gen. Laws 3268. The Act declared Lazy 9 to be a "governmental agency and a political subdivision of this state." *See id.* at § 2(b). In a twelve-page description, the Act establishes the boundaries of the district encompassing 1,719 acres. *Id.* at § 4. The district skirts the edge of, but avoids, the extraterritorial jurisdiction of the City of Austin. When the bill was introduced, the land was owned by a number of individuals who were heirs to the Davenport Estate. On June 29, 2004, before the bill took effect,

the land was purchased by Forest Creek Sweetwater Development, Ltd. Lazy 9 was created for the purpose of providing utilities and other services for a development planned by Sweetwater. In fact, Brad Whittingham, one of the developers, testified Sweetwater could not have afforded to develop the land without the creation of a municipal utility district.

■ SOS is an environmental organization with over 3,000 members, including members living along Bee Creek located downstream from Lazy 9, as well as members living adjacent to Lazy 9 in the Little Barton Creek Watershed. SOS originally focused its activities on the preservation of the Little Barton Creek Watershed, but has broadened its objectives in recent years to trying to protect a larger swath of the Texas hill-country environment by attempting to protect sensitive watersheds which provide drinking water to the City of Austin. Lazy 9 principally lies within the Lake Travis Watershed. Although only a few acres of Lazy 9 are currently within the Little Barton Creek Watershed, Lazy 9 has sought a certificate of convenience and necessity[2] to provide water to another development owned by the developer which is located in the Little Barton Creek Watershed.

House Bill 3565 took effect September 1, 2003. In the bill, the Legislature appointed five temporary directors to the Lazy 9 board of directors and required them to hold an election to confirm the establishment of the district and its initial directors. *See* Act of May 28, 2003, at §§ 8–9. The temporary directors held an organizational meeting September 11, 2003.

SOS filed suit against Lazy 9 June 29, 2004, alleging, among other things, that the notice of the bill was unconstitutional

---

**2.** A certificate of convenience and necessity is required before providing service to the public. *See Tex. Utils. Elec. Co. v. Pub. Citizen, Inc.*, 897 S.W.2d 443, 445 (Tex.App.-Austin 1995, no writ).

and that the bill made an unconstitutional delegation of power. At the trial on the merits, the court refused to admit evidence concerning the inadequate notice or the unconstitutional delegation of power. SOS objected to these rulings and made numerous and voluminous offers of proof.

In its findings of fact and conclusions of law, the trial court found that SOS lacked standing to challenge the constitutionality of the notice or to seek relief on its claims that Lazy 9 "is not a real district." The court also found that the enrolled bill rule prohibits challenging the adequacy of the notice and that the notice met all the requirements of Article XVI, Section 59 of the Texas Constitution. The trial court further held that Lazy 9 was a validly created governmental agency and that the delegation of the power to divide into two or more districts was accompanied by reasonable standards to guide the exercise of such power and, therefore, was a proper power. In addition, the trial court found that the lawsuit lacked merit and found that Bunch filed the lawsuit for an improper purpose. The trial court awarded $199,000.00 in attorney's fees for trial, $45,000.00 for appeal, $20,000.00 if review is sought in the Texas Supreme Court, and $30,000.00 if review is granted by the Texas Supreme Court.[3] Last, the trial court awarded sanctions against Bunch in the amount of $5,000.00.

## I. Could SOS Bring this Lawsuit?

Lazy 9 proposes two arguments as to why SOS could not bring suit to challenge House Bill 3565. First, Lazy 9 contends SOS lacked standing because this suit must be brought as a quo warranto proceeding. Second, Lazy 9 contends the Texas Water Code prohibited SOS from bringing suit. We conclude that the suit was not required to be brought as a quo warranto proceeding and that the Texas Water Code prohibition does not apply to special law districts. SOS, therefore, had standing to bring this suit.

### A. Quo Warranto

Quo warranto is an ancient common-law writ "in the nature of a writ of right for the king against a person who claimed or usurped any office, franchise, or liberty, to inquire by what authority he supported his claim, in order to determine the right." *State ex rel. Colleyville v. City of Hurst,* 519 S.W.2d 698, 700 (Tex.Civ. App.-Fort Worth 1975, writ ref'd n.r.e.). A writ of quo warranto is an extraordinary remedy available to decide issues concerning the proper person entitled to a public office and exercise its functions. *State ex rel. Angelini v. Hardberger,* 932 S.W.2d 489, 490 (Tex.1996). Quo warranto is also available to question the existence of a public corporation or district and its right to act. *See Village of Lakeway v. Lakeway Mun. Util. Dist. No. 1,* 657 S.W.2d 912, 915 (Tex.App.-Austin 1983, writ ref'd n.r.e.). In general, the legality of a public corporation or district must be challenged through a quo warranto proceeding.[4]

---

3. No challenge is made as to the reasonableness of these awards.

4. *Walling v. N. Cent. Tex. Mun. Water Auth.,* 162 Tex. 527, 348 S.W.2d 532, 533 (1961). "Through quo warranto proceedings, 'the State acts to protect itself and the good of the public generally, through the duly chosen agents of the State who have full control of the proceeding.'" *Alexander Oil Co. v. City of Seguin,* 825 S.W.2d 434, 437 (Tex.1991) (quoting *Fuller Springs v. State ex rel. City of Lufkin,* 513 S.W.2d 17, 19 (Tex.1974)). Limiting the challenges to the existence of a public corporation to quo warranto proceedings brought by the Texas Attorney General or a district attorney avoids the problems of successive individual suits, which are only binding on the parties and may yield conflicting

SOS contends that quo warranto proceedings are not required when a district is challenged on constitutional grounds. In support of this contention, SOS cites *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868 (Tex.2000) (finding "water quality protection zones" unconstitutional); *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618 (Tex.1996); and *Sw. Travis County Water Dist. v. City of Austin,* 64 S.W.3d 25 (Tex.App.-Austin 2000, pet. dism'd) (finding statute unconstitutional). However, none of these cases explicitly state such an exception. While all these cases were decided on constitutional grounds, none discuss whether the challenges could only be brought by quo warranto proceedings.

■ Lazy 9 contends that most of these cases were brought by governmental agencies. However, as SOS points out, none of these governmental agencies possessed authority to bring quo warranto proceedings. Authority to bring quo warranto proceedings is limited to the Texas Attorney General, county attorneys, and district attorneys. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 66.001 (Vernon 1997).

■ One exception to the general rule—that challenges to the creation of a water district must be brought through quo warranto proceedings—is that acts, which are void, can be challenged in proceedings other than quo warranto proceedings. In *Alexander Oil,* 825 S.W.2d at 436, the Texas Supreme Court explicitly upheld the line of authority holding quo warranto is not the sole method for attack if the statute creating the authority is void. *See Laidlaw Waste Sys. (Dallas), Inc. v.*

*City of Wilmer,* 904 S.W.2d 656, 658 (Tex. 1995); *Gonzales v. Concerned Citizens of Webberville,* 173 S.W.3d 112, 116 (Tex. App.-Austin 2005, pet. denied); *Durham v. Crutchfield,* 578 S.W.2d 438, 440 (Tex.Civ. App.-Texarkana 1979, writ ref'd n.r.e.). Acts which are merely voidable rather than void, such as procedural irregularities, must be challenged through quo warranto proceedings brought by the State. *See Alexander Oil,* 825 S.W.2d at 439; *Gonzales,* 173 S.W.3d at 115–16; *Durham,* 578 S.W.2d at 440; *City of Irving v. Callaway,* 363 S.W.2d 832, 834 (Tex.Civ.App.-Dallas 1962, writ ref'd n.r.e.).

■ The difference, however, between a void act and a voidable act is not clearly defined. In *Laidlaw Waste,* the Texas Supreme Court, citing only *Alexander Oil,* 825 S.W.2d at 436, held that a private party can collaterally attack a statute as being wholly void, but it noted in dicta that a party has no standing to challenge a statute on "procedural grounds, such as alleged failures to meet the notice and signature requirements....."[5] *Laidlaw Waste Sys.,* 904 S.W.2d at 658. Although *Laidlaw Waste* included notice as a "procedural" issue which must be brought through quo warranto proceedings, we conclude the instant case is distinguishable because the notice is constitutionally required. We believe that the dicta in *Laidlaw Waste* referred to statutory notice rather than constitutionally required notice. Texas courts have consistently held statutory notice challenges must be brought through quo warranto proceedings. *See City of Balch Springs v. George F. Lucas Irrevocable Family Trust,* 101 S.W.3d 116, 122 (Tex.App.-Dallas 2002, no

results. *Alexander Oil Co.,* 825 S.W.2d at 437 (citing *Fuller Springs,* 513 S.W.2d at 19).

**5.** SOS argues that *Laidlaw Waste* was reversed by the Texas Supreme Court's decision

in *Barshop. Barshop,* however, never explicitly discusses quo warranto. *See Barshop,* 925 S.W.2d at 623.

pet.) (statutory notice claims must be brought through quo warranto); *City of San Antonio v. Hardee,* 70 S.W.3d 207, 210 (Tex.App.-San Antonio 2001, no pet.) (statutory notice claims must be brought through quo warranto). But without constitutionally required notice, an act is void. An unconstitutional statute does not constitute color of law. *Miller v. Davis,* 136 Tex. 299, 150 S.W.2d 973 (1941); *City of Houston v. Rodehever,* 615 S.W.2d 837, 839 (Tex.Civ.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.). "A legislative Act which contravenes the Constitution is a void Act. It amounts to nothing and accomplishes nothing.... If an Act is unconstitutional, it is no law at all." *Miller,* 150 S.W.2d at 978. The lack of constitutionally required notice results in a void act which can be challenged through proceedings other than quo warranto proceedings. Likewise, SOS' argument—that the Act makes an unconstitutional delegation of power—is also an allegation the Act is void.

Although challenges to the existence of water districts normally must be brought through quo warranto proceedings, the allegation the bill lacked constitutionally required notice and contained an unconstitutional delegation would, if true, result in a void act. Therefore, these issues can be challenged through means other than quo warranto proceedings. The trial court erred in finding the bill could only be challenged through quo warranto proceedings.

### B. The Texas Water Code

 Lazy 9's second argument as to why SOS could not bring suit is that the Texas Water Code provides that only the attorney general can bring suit to contest the creation of a water district. We dis-

agree. The Water Code's prohibition applies only to general law districts.

Section 49.066 of the Texas Water Code provides that no suit may be instituted in any court of this State contesting "the validity of the creation and boundaries of a district created under this code" except in a "suit brought by the State of Texas through the attorney general." TEX. WATER CODE ANN. § 49.066(d), (e) (Vernon 2000). SOS advances two arguments as to why Section 49.066 should not apply.

First, SOS cites *Bexar Metro. Water Dist. v. City of Bulverde,* 156 S.W.3d 79 (Tex.App.-Austin 2004, pet. denied), for the proposition that Section 49.066 only applies to challenges to the original boundaries of a water district. While the Austin Court of Appeals did state "[t]he third-party prohibition only applies to claims attacking the *validity* of a legislative act creating a water district's boundaries,"[6] the Austin court did not limit the section when the quoted language is considered in context of the case. In *Bexar Metro. Water Dist.,* the Austin court held that a dispute concerning annexation boundaries could be brought by private parties because the statute only prohibited challenging the boundaries that existed when the district was created. The court's language was limited because the suit only concerned a dispute over boundaries created by annexation.

Second, SOS contends Section 49.066 does not apply to this case because it only applies to general law districts. We agree. Section 49.066 is located in the subsection titled "General Law Districts." Further, the use of the qualifying language "created under this code" indicates that the section applies only to general law districts. Although the definition of "districts" likely includes special law districts,[7] Section

---

6. *Bexar Metro. Water Dist.,* 156 S.W.3d at 86.

7. *See* TEX. WATER CODE ANN. § 49.002 (Vernon 2002).

49.066 qualifies the term "district" with the phrase "created under this code." Only general law districts are created by TCEQ under the procedures of the Water Code. *See* Tex. Water Code Ann. § 54.001–.812 (Vernon 2002 & Supp.2005). Special law districts are created by specific acts of the Texas Legislature. Section 49.066 does not apply to special law districts.[8]

Lazy 9 contends Section 49.066 applies to both general law districts and special law districts, but cites no caselaw for this proposition. In addition, Lazy 9 contends Section 49.066 applies due to the language of the bill. Section 11 of House Bill 3565, the Act creating Lazy 9, provides "[t]he district has all of the rights, powers, privileges, authority, functions, and duties provided by the general law of this state, including Chapters 30, 49, 50, and 54, Water Code, applicable to municipal utility districts created under Section 59, Article XVI, Texas Constitution." *See* Act of May 28, 2003, at § 11. We disagree that this language makes Section 49.066 applicable to Lazy 9, a special law district.

Section 49.066 applies only to districts created under the provisions of the Texas Water Code. Because Lazy 9 was created by a special act of the Texas Legislature, the section does not prohibit this suit. We reject Lazy 9's argument that Section 49.066 prohibits SOS from bringing this suit.

## II. The Enrolled Bill Rule Bars Introduction of Evidence

 SOS contends the trial court erred in excluding its evidence challenging whether the notice provisions of Article XVI, Section 59(e) of the Texas Constitution have been met. The inclusion or exclusion of evidence is committed to the trial court's discretion; as such, the appellate court reviews these issues under an abuse of discretion standard. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex.2000); *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995); *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 239 (Tex.App.-Texarkana 2005, no pet.). A trial court abuses its discretion when it rules without regard to any guiding rules or principles. *Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 297 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). We affirm a trial court's ruling if there is any legitimate basis for the ruling. *Scottsdale Ins. Co.*, 175 S.W.3d at 297; *Rogers v. Peeler*, 146 S.W.3d 765, 773 (Tex.App.-Texarkana 2004, no pet.). A trial court cannot abuse its discretion if it reaches the right result, even for the wrong reasons. *Luxenberg v. Marshall*, 835 S.W.2d 136, 141–42 (Tex. App.-Dallas 1992, no writ). Lazy 9 contends the enrolled bill rule prohibits evidence from being introduced relating to any deficiencies in the notice. We agree.

The bill creating Lazy 9 provides that the notice requirements have been met. Section 21(a) of House Bill 3565 states:

> The legal notice of the intention to introduce this Act, setting forth the general substance of this Act, has been published as provided by law, and the notice and a copy of this Act have been furnished to all persons, agencies, officials, or entities to which they are required to be furnished under Section 59, Article XVI, Texas Constitution, and Chapter 313, Government Code.

Act of May 28, 2003, at § 21(a).

 As noted by the Fourteenth District Court of Appeals, "The enrolled bill

---

8. To the extent that dicta in *Bexar Metro. Water Dist.* suggests that Section 49.066 applies to special law districts, we disagree.

rule has been repeatedly stated to be that a duly authenticated, approved, and enrolled statute imports absolute verity and is conclusive that an act was passed in every respect according to constitutional requirements." *Beckendorff v. Harris–Galveston Coastal Subsidence Dist.*, 558 S.W.2d 75, 78 (Tex.Civ.App.-Houston [14th Dist.] 1977), *writ ref'd n.r.e.*, 563 S.W.2d 239 (Tex.1978); *see, e.g., Jackson v. Walker*, 121 Tex. 303, 49 S.W.2d 693, 694 (1932); *Wallace v. Ranger Hosp. Dist.*, 474 S.W.2d 568, 569 (Tex.Civ.App.-Eastland 1971, writ ref'd n.r.e.); *Moore v. Edna Hosp. Dist.*, 449 S.W.2d 508, 514–15 (Tex. Civ. App.-Corpus Christi 1969, writ ref'd n.r.e.); *Ellison v. Tex. Liquor Control Bd.*, 154 S.W.2d 322, 326 (Tex.Civ.App.-Galveston 1941, writ ref'd).

■ SOS contends the Texas Supreme Court abandoned the enrolled bill rule in *Ass'n of Tex. Prof'l Educators v. Kirby*, 788 S.W.2d 827 (Tex.1990), and confined the above-cited decisions to the facts.[9] In *Kirby*, the official legislative journals, testimony of the presiding officers of both houses, and a stipulation signed by the attorney general indicated that the enrolled bill signed by the governor was not the bill passed by the Legislature. *Id.* at 830. We note the Texas Supreme Court questioned the wisdom of the enrolled bill rule and acknowledged that the rule is "contrary to modern legal thinking" which disfavors conclusive presumptions which can produce results inconsistent with the actual facts. *Id.* at 829. The court noted,

"[T]he present tendency favors giving the enrolled version only prima facie presumptive validity, and a majority of states recognize exceptions to the enrolled bill rule." *Id.* However, the court did not explicitly overrule the enrolled bill rule. *Id.* The Texas Supreme Court only recognized a narrow exception when conclusive evidence shows "the enrolled bill signed by the governor was not the bill passed by the legislature," but did not otherwise modify the enrolled bill rule. *Id.* at 830. The Texas Supreme Court held "an exception to the enrolled bill rule must exist to avoid elevating clerical error over constitutional law." *Id.* at 829–30. This case is clearly distinguishable from *Kirby* since the complaint here is not that the bill is not the same bill passed into law, but rather that the findings of the bill were incorrect. Thus, this case does not fall within the narrow exception recognized by the Texas Supreme Court in *Kirby*.

In *Beckendorff*, the plaintiffs challenged the creation of the Harris–Galveston Coastal Subsidence District, a conservation and reclamation district, alleging that a copy of the bill had not been delivered to the governing body of each political subdivision within the proposed district, as required by Article XVI, Section 59(e) of the Texas Constitution. *Beckendorff*, 558 S.W.2d at 77. While noting in its opinion that the enrolled bill rule is "too broad," the Fourteenth District Court of Appeals determined it was bound by precedent. *Id.* at 78–79. The court held that the authenticated statute was the best evi-

---

**9.** Alternatively, SOS contends the facts at issue are adjudicative facts, rather than legislative facts. Adjudicative facts are facts particular to a case, while legislative facts are facts related to legal reasoning, the lawmaking process, and policy determination. *O'Connell v. State*, 17 S.W.3d 746, 749 (Tex.App.-Austin 2000, no pet.). The distinction between adjudicative facts and legislative facts is not relevant because the enrolled bill rule is a rule of admissibility. Even if the adequacy of the notice is an adjudicative fact and courts should not defer to the Legislature's finding, the distinction has no relevance concerning whether the evidence is admissible. In addition, SOS asserts the enrolled bill rule violates the separation of powers of the Texas Constitution. The separation of powers argument is inadequately briefed. *See* TEX.R.APP. P. 38.1.

dence that the required formalities were observed and that any extrinsic evidence to the contrary was "absolutely prohibited." *Id.* We agree with the reasoning of the Fourteenth District in *Beckendorff.*

Although this case illustrates the dangers of the enrolled bill rule which may produce results inconsistent with the actual facts, the enrolled bill rule requires the exclusion of the evidence. The enrolled bill rule has yet to be abandoned by the Texas Supreme Court, and we are bound by precedent until the Texas Supreme Court decides to modify or create additional exceptions to the rule. The trial court, therefore, did not abuse its discretion in excluding the evidence challenging whether the notice provisions of Article XVI, Section 59(e) of the Texas Constitution were met.

## III. SOS Failed to Show an Unconstitutional Delegation of Power

In its third and fourth points of error, SOS contends the trial court committed reversible error by excluding evidence relating to whether House Bill 3565 contained an unconstitutional delegation of power. SOS advanced two arguments: 1) if Lazy 9 is a public entity, there are no reasonable standards to guide the agency in exercising the delegation, and 2) if Lazy 9 is a private entity, the delegation is unconstitutional under the standards of *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen,* 952 S.W.2d 454 (Tex.1997).

 When determining if the trial court committed reversible error in excluding evidence, we examine the entire record to determine whether the trial court committed error that probably resulted in an improper judgment. *Penny,* 160 S.W.3d

at 235; *see also* TEX.R.APP. P. 44.1(a); *McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex.1992). Consequently, a successful challenge to an evidentiary ruling requires the complaining party to show the judgment turned on the particular evidence excluded. *Able,* 35 S.W.3d at 617; *Alvarado,* 897 S.W.2d at 753–54. This "turns on" test is not a "but for" test, but rather a "probable" test, such that the appellant must show that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *McCraw,* 828 S.W.2d at 758. We will reverse the trial court's evidentiary ruling only when the error is controlling on a material issue dispositive to the case and probably caused the rendition of an improper judgment. *Peeler,* 146 S.W.3d at 773; *Able* 35 S.W.3d at 617; *see also* TEX. R.APP. P. 44.1.

If Lazy 9 is a public entity, SOS argues the delegation is unconstitutional because the Legislature failed to provide any standards to guide Lazy 9 in exercising the delegation. In their private delegation argument, SOS contends Lazy 9 is in reality a private organization, rather than a public entity, and the delegation of the power to divide into multiple districts is an unconstitutional delegation of legislative power to a private entity.

 Although SOS filed numerous offers of proof,[10] SOS failed to direct this Court to the specific exhibits or depositions it contends were wrongfully excluded. Other than conclusory assertions concerning what the excluded evidence would have proved, SOS fails to cite to any of the offers of proof. Even if the trial court abused its discretion in excluding the evi-

---

10. The record contains approximately 200 exhibits and offers of proof, the vast majority of which are offers of proof.

dence,[11] SOS has not shown the exclusion probably caused the rendition of an improper judgment.[12]

### A. Exclusion of Evidence that Lazy 9 is a Private Entity

Even if the trial court erred in excluding the evidence, SOS has failed to show the judgment turned on the evidence excluded. The standard to determine whether a delegation is unconstitutional depends on whether an entity is public or private. *See Lewellen,* 952 S.W.2d at 470; *F.M. Props. Operating Co.,* 22 S.W.3d at 877. While acknowledging this determination is often difficult, the Texas Supreme Court noted in *Lewellen* that "courts have universally treated a delegation as private where 'interested groups have been given authoritative powers of determination, usually in conjunction with a public adminis-

trative agency.'" *Lewellen,* 952 S.W.2d at 471.

SOS contends the trial court erred in preventing it from proving the directors of Lazy 9 are so closely linked to the developer as to be indistinguishable. However, SOS fails to point this Court toward the offers of proof which could prove this allegation. *See Alvarado,* 897 S.W.2d at 753–54. SOS argues it is not required to provide a "detailed recitation," but fails to cite any caselaw for that proposition. SOS has failed to show the exclusion of evidence probably caused the trial court to incorrectly find that Lazy 9 is a public entity.[13]

### B. Exclusion of Evidence Concerning the Lack of Reasonable Standards

When the Legislature delegates powers to a governmental entity, the Legislature must establish reasonable stan-

---

**11.** It is unclear whether the trial court relied on the enrolled bill rule in excluding evidence concerning the unconstitutional delegation of power or based the exclusion on Rules 402 and 403 of the Texas Rules of Evidence. *See* Tex.R. Evid. 402, 403. The enrolled bill rule by its plain language does not prohibit challenging a bill as passed. Further, Lazy 9 has not argued, or cited any authority that the enrolled bill rule prohibits evidence relating to a challenge based on an alleged unconstitutional delegation of power. Lazy 9 does argue, however, that the trial court based its ruling on relevance. The record contains an intricate labyrinth which must be traversed to discover the precise basis of Lazy 9's objection to each of the exhibits. Because SOS has failed to direct this Court to the excluded evidence being complained of and has failed to show that the judgment turned on the excluded evidence, it is not necessary for us to determine if the trial court abused its discretion in excluding the evidence.

**12.** Lazy 9 argues that error was not preserved for appellate review. SOS preserved both unconstitutional delegation arguments in its post-trial briefs, arguments to the trial court, and in its objections to the findings of fact.

**13.** Further, our search of the record has not discovered excluded evidence which indicates

the exclusion probably resulted in an improper judgment. The excluded evidence, when considered in connection with the admitted evidence, merely creates a suspicion Lazy 9 may be a private entity. The vice president of Lazy 9, who had rather limited experience managing a municipal utility district, testified Lazy 9 was a private entity. All of the temporary directors of Lazy 9 owned small tracts in the development. Some of Lazy 9's temporary directors went to college with some of the developers. The developers paid their attorney to perform legal work for Lazy 9, and the attorney had difficulty determining what work was performed for which entity. The board of directors also signed a waiver of any conflict of interest which the dual representation might create. In addition, the developers also contributed money to Lazy 9 to allow Lazy 9 to pay its expenses. The attorney for the developers testified that "to a large extent" the interests of Lazy 9 and the developer were identical. The mere suspicion that Lazy 9 might actually be a private entity, rather than a public entity, is insufficient to show reversible error. SOS has failed to show reversible error by failing to show the judgment turned on the particular evidence excluded.

dards to guide the agency in exercising those powers. *F.M. Props. Operating Co.*, 22 S.W.3d at 873. SOS contends the only standard enumerated by the Legislature is that the division cannot result in a district of less than 100 acres. This allegation, though, is incorrect. The bill requires that the division must occur pursuant to an election, provide notice, and comply with other restrictions.[14] SOS has failed to show the excluded evidence probably caused the trial court to improperly conclude the Legislature provided reasonable standards to guide Lazy 9 in exercising the power to divide.

**C. Exclusion of Evidence as to Whether the Delegation was a Private Delegation**

 SOS contends the trial court committed reversible error in excluding evidence that the delegation of authority to divide was an unconstitutional private delegation. In *Lewellen,* the Texas Supreme Court set forth eight factors to be considered when determining if the Legislature made an unconstitutional delegation of power to a private entity.[15] The Texas Supreme Court did note that not all private delegations are unconstitutional and many can be of immense benefit. *Id.* at 469. SOS fails to direct us to any excluded evidence which would have been material to this determination. As such, SOS has failed to show the trial court's conclusions turned on the particular evidence excluded.

**IV. No Abuse of Discretion in Awarding Attorney's Fees**

SOS contends the award of attorney's fees is improper because 1) Lazy 9 filed a mirror image declaratory judgment; 2) the trial court abused its discretion in finding the award just and equitable; and 3) we should reverse the trial court on the merits. Because the prohibition against mirror image declaratory judgments does not apply under the facts of this case, and because the trial court did not abuse its discretion in finding the award just and equitable, we affirm the award of attorney's fees.

**14.** At trial, Lazy 9 argued that a Water Control and Improvement District (WCID) has identical standards. A WCID cannot have any outstanding debt secured by taxes or revenues, the division must occur pursuant to an election, provide notice, and comply with other restrictions as required by Texas Water Code Sections 51.749 through 51.758. These standards are substantially similar to the Lazy 9 standards. *See* TEX. WATER CODE ANN. §§ 51.749–758 (Vernon 2002).

**15.** We note *Lewellen* was a plurality decision. However, five justices agreed on the eight-factor test contained in part V of the opinion. The eight factors are:
 1. Are the private delegate's actions subject to meaningful review by a state agency or other branch of state government?
 2. Are the persons affected by the private delegate's actions adequately represented in the decisionmaking [sic] process?
 3. Is the private delegate's power limited to making rules, or does the delegate apply the law to particular individuals?

 4. Does the private delegate have a pecuniary or other personal interest that may conflict with his or her public function?
 5. Is the private delegate empowered to define criminal acts or impose criminal sanctions?
 6. Is the delegation narrow in duration, extent, and subject matter?
 7. Does the private delegate possess special qualifications or training for the task delegated to it?
 8. Has the Legislature provided sufficient standards to guide the private delegate in its work?
*Id.* at 472. All eight factors must be considered, and no one factor is necessarily determinative. *See Proctor v. Andrews*, 972 S.W.2d 729, 735 (Tex.1998). Further, courts should, if possible, interpret the language of the statute in a manner that renders it constitutional. *Id.*

## A. SOS Failed to Preserve Error

▮ Lazy 9 contends SOS has "waived" any challenge to the attorney's fees as a "mirror-image" declaratory judgment. SOS has failed to direct us to where in the record it made this argument to the trial court. "As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion...." Tex R.App. P. 33.1(a). Error has not been preserved for our review concerning the mirror-image argument. However, error has been preserved concerning whether the award was just and equitable.

## B. Mirror–Image Declaratory Judgment

Even if error had been preserved, the trial court did not err in awarding attorney's fees. SOS cites *Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 566 (Tex.App.-Texarkana 2003, pet. denied); *Lyco Acquisition 1984 Ltd. P'ship v. First Nat'l Bank of Amarillo*, 860 S.W.2d 117, 120 (Tex.App.-Amarillo 1993, writ denied); *Fowler v. Resolution Trust Corp.*, 855 S.W.2d 31, 37 (Tex.App.-El Paso 1993, no writ); and *In re Estate of Kidd*, 812 S.W.2d 356, 359 (Tex.App.-Amarillo 1991, writ denied), for the proposition that a mirror-image declaratory judgment brought for the sole purpose of attorney's fees is improper. The cited cases are clearly distinguishable from this case.

▮ When a party brings a declaratory judgment action by way of a counterclaim or amended petition and the declaratory judgment involves only issues already raised by the original claim, the party is not entitled to an award of attorney's fees. *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 873 (Tex.App.-Dallas 2005, no pet.); *Flagship Hotel, Ltd.*, 117 S.W.3d

at 566. The reason for this prohibition is to prevent a declaratory relief plea simply to pave the way to recover attorney's fees. *Hartford Cas. Ins. Co. v. Budget Rent–A–Car Sys., Inc.*, 796 S.W.2d 763, 772 (Tex. App.-Dallas 1990, writ denied).

▮ This case is distinguishable because SOS brought its claims as a declaratory judgment. The rule, that a mirror-image counterclaim for declaratory relief will not support an award of attorney's fees, only applies when a plaintiff does not request declaratory relief. Once a plaintiff claims relief under the Declaratory Judgments Act, the mirror-image rule does not prohibit the trial court from awarding attorney's fees even if the defendant's counterclaim for declaratory relief only duplicates the claims already raised. *First City Nat'l Bank of Midland v. Concord Oil Co.*, 808 S.W.2d 133, 138 (Tex.App.-El Paso 1991, no writ). Under the Declaratory Judgments Act, the trial court can award attorney's fees which are just and equitable. There is no requirement attorney's fees must be awarded to the party bringing the suit. Either party may obtain attorney's fees regardless of which party is affirmatively seeking relief. *Hartford Cas. Ins. Co.*, 796 S.W.2d at 771; *Knighton v. Int'l Bus. Machs. Corp.*, 856 S.W.2d 206, 210 (Tex.App.-Houston [1st Dist.] 1993, writ denied). Even if the mirror-image declaratory judgment action was improper, Lazy 9 could still recover attorney's fees because SOS brought its claims as a declaratory judgment action. Because either party could obtain attorney's fees, the trial court did not abuse its discretion in awarding such fees to Lazy 9.

## C. Award of Attorney's Fees Just and Equitable

▮ SOS also contends the award of attorney's fees is not just and equitable.[16] SOS argues that ordering a local

---

**16.** As noted above, SOS has not challenged the reasonableness of the attorney's fees.

nonprofit organization to pay an arm of the local government attorney's fees is not equitable and just. A prevailing party in a declaratory judgment action is not entitled to attorney's fees simply as a matter of law; entitlement depends on what is equitable and just, and the trial court's power is, in that respect, discretionary. *Sharp v. Hobart Corp.*, 957 S.W.2d 650, 654 (Tex. App.-Austin 1998, no pet.); *Unified Loans, Inc. v. Pettijohn*, 955 S.W.2d 649, 654 (Tex. App.-Austin 1997, no pet.). Because reasonable minds can differ concerning whether the attorney's fees are just and equitable, we cannot say the trial court abused its discretion in awarding such fees to Lazy 9.

## V. Trial Court Abused its Discretion in Sanctioning SOS' Attorney

SOS and Bunch challenge the trial court's assessment of sanctions against Bunch. According to Bunch, the trial court erred in finding the suit was frivolous and brought for an improper purpose. The contentions pursued by SOS in this suit clearly had at least a reasonable basis in the law and the facts. As such, the suit was not frivolous. We also find that the trial court abused its discretion in finding that Bunch brought the suit for an "improper purpose." It was, therefore, error for the trial court to assess sanctions against Bunch.

 Sanctions for filing frivolous pleadings are available under Chapter 10 of the Texas Civil Practice and Remedies Code or under Rule 13 of the Texas Rules of Civil Procedure.[17] A trial court's Rule

13 sanction is reviewed for an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581 (Tex.2006). "A trial court's failure to specify the good cause for sanctions in a sanction order may be an abuse of discretion." *Gaspard v. Beadle*, 36 S.W.3d 229, 239 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Sanctions should only be assessed "in those egregious situations where the worst of the bar uses our honored system for ill motive without regard to reason and the guiding principles of the law." *Dyson Descendant Corp. v. Sonat Exploration Co.*, 861 S.W.2d 942, 951 (Tex.App.-Houston [1st Dist.] 1993, no writ). Further, sanctions should not be used as "a weapon ... to punish those with whose intellect or philosophic viewpoint the trial court finds fault." *Tarrant County v. Chancey*, 942 S.W.2d 151, 154–55 (Tex.App.-Fort Worth 1997, no writ).

 A trial court abuses its discretion if it acts "without reference to any guiding rules and principles," such that its ruling is arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). When determining if the trial court abused its discretion, we must ensure that the sanctions were appropriate or just. *Id.* The Texas Supreme Court has articulated a two-part inquiry that we should conduct in making this determination. *Id.* First, we must ensure the punishment was imposed on the true offender and tailored to remedy any prejudice caused. *Id.* Second, we must make certain that less severe

---

Whether attorney's fees are reasonable and necessary is a different issue than whether the award of the fees was equitable and just. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1997).

**17.** *See* Tex.R. Civ. P. 13; Tex. Civ. Prac. & Rem.Code Ann. § 10.004 (Vernon 2002). We

note Chapter 9 of the Texas Civil Practice and Remedies Code also provides for the award of sanctions, but sanctions under Chapter 9 may not be imposed in any proceeding to which the sanctions provisions of either Chapter 10 or Rule 13 apply. *See* Tex. Civ. Prac. & Rem. Code Ann. § 9.012(h) (Vernon 2002).

sanctions would not have been sufficient. *Id.* We will review sanctions under Chapter 10 by the same standard.

The trial court specified in the judgment that sanctions were assessed "pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code." "A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both." TEX. CIV. PRAC. & REM.CODE ANN. § 10.004(a). Section 10.001 provides:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
>
> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM.CODE ANN. § 10.001 (Vernon 2002). The trial court found that Bunch signed and filed the suit for an improper purpose and that both the notice and unconstitutional delegation arguments were frivolous.

### A. Discretion Abused in Finding SOS' Claims Frivolous

Although SOS did not ultimately succeed on the merits, the lawsuit was not frivolous. As long as the lawsuit had a "reasonable basis in law and constituted an informed, good-faith challenge," it was not frivolous. *See Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist.,* 826 S.W.2d 124, 125 (Tex.1991) (per curiam). A lawsuit is not frivolous if it is based on a good-faith argument for the extension, modification, or reversal of existing law. *Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 637 (Tex. 1989); *see Herring v. Welborn,* 27 S.W.3d 132, 143 (Tex.App.-San Antonio 2000, pet. denied); *Campos v. Inv. Mgmt. Props., Inc.,* 917 S.W.2d 351, 355–56 (Tex.App.-San Antonio 1996, writ denied).

SOS presented an argument, with a reasonable basis in the law, advocating reversal of the enrolled bill rule. As discussed above, the Fourteenth District Court of Appeals and the Texas Supreme Court have both criticized the current form of the enrolled bill rule. If the enrolled bill rule did not bar introduction of evidence challenging the legislative finding, SOS had evidence showing the notice was not sufficient. The notice simply stated that a water district entitled "Lazy Nine Municipal Utility District" would be created in Travis County. Specifically, the notice, published in the *Austin American–Statesman* March 2, 2003, provided as follows:

> Pursuant to Tex. Gov't Code Ann. Sec. 313.002, this is to give notice of intent to introduce in the 78th Texas Legislature, Regular Session, a bill to be entitled

"An Act Relating to the creation, organization, administration, powers, duties, operation, and financing of Lazy Nine Municipal Utility District" of Travis County. This notice does not specify where in Travis County the district would be created or that the district would be delegated power to create new districts. Entirely omitted from the notice is any information in relation to the district's size, powers, and duties, or the fact that Lazy 9 could divide, a characteristic not typical of municipal utility districts. In addition, SOS offered evidence that the Commissioners Court of Travis County was not notified thirty days in advance of the filing of the original bill. Although SOS failed to prove that the delegation of authority to divide was unconstitutional, the argument had a reasonable basis in the law. We conclude the trial court abused its discretion in finding the suit was groundless.

### B. Failure to Rebut Presumption of Good Faith

Although Rule 13 requires a party to have filed a groundless pleading brought in bad faith or a groundless pleading for harassment, sanctions under Chapter 10 can be awarded if the suit was filed for an improper purpose, even if the suit was not frivolous. *See Alpert v. Crain, Caton & James, P.C.,* 178 S.W.3d 398, 411–12 (Tex. App.-Houston [1st Dist.] 2005, (2) pets. denied); *compare* TEX.R. CIV. P. 13 *with* TEX. CIV. PRAC. & REM.CODE ANN. § 10.001. Under the facts of this case, however, there is insufficient evidence of an improper purpose.

■■■■■ We construe the phrase "improper purpose" as the equivalent of "bad faith" under Rule 13. *See* TEX.R. CIV. P. 13; *cf. Elwell v. Mayfield,* No. 10–04–00322–CV, 2005 WL 1907126, at *5, 2005 Tex.App. LEXIS 6356, at *17 (Tex.App.-Waco Aug. 10, 2005, pet. denied) ("nonfriv-

olous" requirement is the same as the "good faith" requirement). Courts must presume that pleadings are filed in good faith. *GTE Commc'n Sys. Corp. v. Tanner,* 856 S.W.2d 725, 731 (Tex.1993). The party seeking the sanctions bears the burden of overcoming the presumption of good faith in the filing of pleadings. *Id.* Under Rule 13, "bad faith" requires the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. *Stites v. Gillum,* 872 S.W.2d 786, 794–96 (Tex.App.-Fort Worth 1994, writ denied).

■■■■ The trial court concluded Bunch filed frivolous claims for an improper purpose, including "the effort to prevent the scheduled June 30, 2004 closing of a real-estate transaction by a non-party Buyer and non-party Sellers." Although there was a considerable amount of evidence introduced at the hearing on sanctions, the evidence failed to overcome the presumption of good faith. On June 30, the day after the lawsuit was filed, a sale of the property within the district was scheduled to close. Lazy 9 introduced evidence that, because of the lawsuit, the property did not close as scheduled and the developers were required to come up with $6 million more in equity and had to pay an additional $600,000.00 in interest. Although the evidence presented supports an inference that SOS filed suit in order to delay or prevent the closing and inflict economic damage, the evidence also supports other inferences. On the day SOS filed suit, the Travis County Commissioners Court was considering a preliminary plat for a portion of the property within the boundaries of the District. Bunch testified the filing of the lawsuit was due to the county commissioners court hearing, and was not for any improper purpose. There is no evidence supporting the finding of bad faith

other than the timing of the suit.[18] Under the circumstances of this case, Lazy 9 failed to overcome the presumption of good faith. Therefore, the trial court abused its discretion.

We reverse the trial court's assessment of sanctions against Bunch.

### Conclusion

The trial court erred in its reliance on the quo warranto doctrine and the Texas Water Code in finding that SOS lacked standing to bring this suit. The trial court, however, did not err in excluding evidence relating to the lack of notice, because the enrolled bill rule bars the introduction of such evidence. Even if the trial court erred in excluding evidence concerning SOS' unconstitutional delegation of power argument, SOS has failed to show that the exclusion probably caused the rendition of an improper judgment. Further, the trial court did not abuse its discretion in awarding attorney's fees to Lazy 9. Because the suit was not frivolous and Lazy 9 did not rebut the presumption that the pleadings were in good faith, the trial court abused its discretion in assessing sanctions against Bunch.

For the reasons stated, we reverse the sanctions against Bunch. Therefore, we modify the trial court's judgment to delete the award of sanctions. As modified, we affirm the judgment.

### OPINION ON MOTION FOR REHEARING

Save Our Springs Alliance, Inc. (SOS) has filed a motion for rehearing in which it contends this Court erred in (1) failing to address its notice argument under subsection (d) of Article XVI, Section 59 of the Texas Constitution; (2) concluding that

SOS' separation of powers argument was inadequately briefed; (3) failing to remand to the trial court the award of attorney's fees to Lazy 9 Municipal Utility District (Lazy 9) for a redetermination of such fees; and (4) failing to hold House Bill 3565 unconstitutional on its face. We overrule the motion.

### Notice Under Subsection (d)

In its first argument on rehearing, SOS directs our attention to the failure of our original opinion to address whether the trial court erred in excluding evidence concerning notice required under Article XVI, Section 59(d) of the Texas Constitution in addition to evidence concerning notice under Article XVI, Section 59(e). *See* TEX. CONST. art. XVI, § 59(d), (e). In addition, SOS contends evidence concerning notice under subsection (d) is distinguishable from evidence concerning notice under subsection (e) because *Beckendorff v. Harris–Galveston Coastal Subsidence Dist.* dealt only with subsection (e). 558 S.W.2d 75, 78 (Tex.Civ.App.-Houston [14th Dist.] 1977), *writ ref'd n.r.e.*, 563 S.W.2d 239 (Tex.1978). According to SOS, the Texas Supreme Court's decision in *Barshop v. Medina County Underground Water Conservation District,* which addressed the merits of a challenge under subsection (d), cannot be reconciled with *Beckendorff. Compare Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 627–28 (Tex.1996), *with Beckendorff,* 558 S.W.2d at 78.

As noted in our original opinion, the Texas Supreme Court did not address the enrolled-bill rule in *Barshop.* There could be numerous reasons for this other than an implied abandonment of that rule. Thus, we are unwilling to interpret *Barshop* as an implicit abandonment of the

---

**18.** We note Lazy 9 introduced an e-mail sent to an SOS e-mail address which claimed the purchaser had exhausted its contractual rights to extend the closing. There is no evidence the directors of SOS considered this e-mail in deciding to file suit.

enrolled-bill rule. Further, we are not persuaded that the applicability of the enrolled-bill rule to notice under subsection (d) is distinguishable from notice under subsection (e). For the reasons stated in our original opinion concerning notice under subsection (e), we likewise hold the trial court did not err in excluding evidence concerning notice under Article XVI, Section 59(d) of the Texas Constitution. The enrolled-bill rule requires the exclusion of the evidence. The trial court, therefore, did not abuse its discretion in excluding evidence challenging whether the notice provisions of Article XVI, Section 59(d) of the Texas Constitution were met.

**Separation of Powers Argument**

■ In footnote 4 of its motion for rehearing, SOS challenges our conclusion that its separation of powers argument was inadequately briefed and states that "[t]here is no authority or case law that supports such a rigidified and draconian application of Rule 38.1." SOS further says it spent four pages in its original brief discussing this issue and cited three Texas Supreme Court opinions and one court of appeals decision: *Corzelius v. Harrell,* 143 Tex. 509, 186 S.W.2d 961, 964 (1945); *Tarrant County v. Ashmore,* 635 S.W.2d 417 (Tex.1982); *Holmes v. Morales,* 924 S.W.2d 920 (Tex.1996); *Black v. Dallas County Bail Bond Bd.,* 882 S.W.2d 434 (Tex.App.-Dallas 1994, no writ). SOS is "flummoxed about how such detailed atten-

tion to an argument can be dismissed as 'inadequately briefed.'"

SOS' brief contains a single paragraph concerning the separation of powers argument, fails to cite any standards, fails to apply the separation of powers doctrine to the facts of this case, includes no citation to the record, and cites only one case, *Corzelius,* relevant to the separation of powers doctrine. The remaining pages claimed by SOS as part of its briefing on this issue actually concern whether notice is an adjudicative fact or a legislative fact.

SOS appears to contend that the three pages discussing the difference between legislative and adjudicative facts is part of their separation of powers argument. Although the separation of powers section of its brief immediately precedes the discussion of legislative and adjudicative facts, the two discussions are contained in separate sections and there is little indication that both sections concern separation of powers. Further, only one of the cases cited in the remaining pages concerns the separation of powers doctrine.[19]

■ We discussed the difference between adjudicative and legislative facts in a footnote in our original opinion. Adjudicative facts are facts particular to a case while legislative facts are facts related to legal reasoning, the law-making process, and policy determination. *O'Connell v. State,* 17 S.W.3d 746, 749 (Tex.App.-Austin 2000, no pet.); *see Ashmore,* 635 S.W.2d at 423.[20] Courts should defer to the Legislature's findings of legislative facts, but

19. *See Black,* 882 S.W.2d 434 (Tex.App.-Dallas 1994, no writ) (finding a local rule violated separation of powers provision of Texas Constitution because it allowed sheriff's department to make final determination of amount of re-arrest costs). SOS merely cited *Black* and provided no explanation or analysis concerning how it supports its proposition that the enrolled-bill rule violates the separation of powers doctrine.

20. In *Ashmore,* the Texas Supreme Court found there was no procedural due process violation when no adjudicative facts were at issue. *Ashmore,* 635 S.W.2d at 423. The case does not stand for the proposition that the distinction between adjudicative facts and legislative facts governs the existence of a separation of powers violation.

courts are not required to defer to the determination of adjudicative facts. *See O'Connell,* 17 S.W.3d at 749.

Even if the facts at issue are adjudicative facts, such a classification would not be determinative of whether the enrolled-bill rule violates the separation of powers doctrine—the distinction is not the standard for determining a separation of powers violation. Whether the facts are adjudicative facts or legislative facts may prove relevant concerning whether the court must defer to the findings of the Legislature, but the classification is not determinative of whether the enrolled-bill rule violates the separation of powers doctrine. As we stated in our original opinion, the enrolled-bill rule is a rule of admissibility.

 We agree with SOS that the standard for whether an issue has been adequately briefed should not be rigid or draconian. Under certain circumstances, a single case may prove to be "appropriate citations to authorities and to the record." *See* TEX.R.APP. P. 38.1(h). Whether an issue has been adequately briefed depends on the complexity of the issue and the extent courts have addressed the issue. The separation of powers doctrine has been extensively litigated in courts. Although SOS cited the above cases, its argument consists exclusively of conclusory

statements that the enrolled-bill rule violates the separation of powers doctrine. None of the authorities cited involve similar circumstances. We adhere to our earlier conclusion that SOS' separation of powers argument has been inadequately briefed.[21]

## Remand of Attorney's Fees

 Next, SOS contends this Court erred in affirming the trial court's determination that awarding attorney's fees to Lazy 9 was just and equitable. According to SOS, this Court should have remanded this issue to the trial court for a reassessment of attorney's fees in light of our holdings that (1) SOS had standing to bring its lawsuit; (2) the lawsuit was not frivolous; (3) the evidence was insufficient that the lawsuit was brought for an improper purpose; and (4) SOS' attorney should not have been sanctioned. SOS argues that our refusal to vacate the attorney's fees and remand for a reassessment of those fees assumes that the trial court's erroneous determination of these issues played no role in the level of attorney's fees that it determined to be equitable and just.

All of the cases cited by SOS, save one, involved a complete reversal. *See City of Harlingen v. Alvarez,* No. 13–03–00169–

---

21. Even if the issue is adequately briefed, SOS has failed to show the bill violates the separation of powers doctrine. The separation of powers doctrine prohibits one branch of government from exercising a power inherently belonging to another branch. *See* TEX. CONST. art. II, § 1. The separation of powers doctrine is violated "only when the functioning of the judicial process in a field constitutionally committed to the control of the courts is interfered with by the executive or legislative branches." *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 600 (Tex. 2001); *State Bd. of Ins. v. Betts,* 158 Tex. 83, 308 S.W.2d 846, 851–52 (1958). All the cases cited by SOS are either of marginal relevance or are clearly distinguishable. Neither *Ashmore* nor *Holmes* concern the separation of powers doctrine. *Holmes,* 924 S.W.2d at 920; *Ashmore,* 635 S.W.2d at 417. *Corzelius* is clearly distinguishable because the Texas Supreme Court found no separation of powers violation. *See Corzelius,* 186 S.W.2d at 964. Last, *Black* is distinguishable because the sheriff was performing duties more clearly constitutionally committed to the judiciary than the duties at issue here. *See Black,* 882 S.W.2d at 439. Even if adequately briefed, the authorities cited by SOS do not persuade us that the enrolled-bill rule violates the separation of powers doctrine.

CV, —— S.W.3d ——, 2005 WL 2387401, 2005 Tex.App. LEXIS 7976 (Tex.App.-Corpus Christi Sept. 29, 2005, no pet. h.) (mem.op.); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 77 (Tex.App.-Dallas 2001, pet. denied); *Scott v. Cannon*, 959 S.W.2d 712, 723 (Tex.App.-Austin 1998, pet. denied). The remaining case cited by SOS involved a more extensive reversal than in this case. In *Securtec*, this Court held there was a genuine issue of material fact concerning whether Gregg County violated the statutory bidding requirements and, therefore, summary judgment was inappropriate. *Securtec, Inc. v. County of Gregg*, 106 S.W.3d 803, 813–14 (Tex.App.-Texarkana 2003, pet. denied) (part of judgment affirmed and severed, remaining part reversed and remanded for new trial). This Court ordered a reconsideration of attorney's fees "if the trial court does find in favor of Securtec on remand." *Id.* at 817. Because *Securtec* reversed a significant portion of the trial court's judgment, it is clearly distinguishable from the current case.

In *Ranger Ins. Co. v. Ward*, 107 S.W.3d 820 (Tex.App.-Texarkana 2003, pet. denied), the appellant urged the Court to reverse the award of attorney's fees and remand to the trial court for reconsideration of whether the award was equitable. This Court rejected the appellant's argument because "overall, the trial court did not err in its interpretation and application of the law" and therefore, "it did not abuse its discretion in awarding attorney's fees to the Landowners." *Id.* at 830.

Similar to *Ranger Insurance*, the trial court in this case committed some errors, but the trial court's judgment was correct overall. As SOS correctly asserts, our opinion undermined at least six of the trial court's findings of facts and conclusions of law. However, five of these findings are entirely concerned with the sanctions as-sessed against William G. Bunch. The findings concerning sanctions against Bunch did not necessarily influence the trial court's conclusions concerning whether the award of attorney's fees was equitable or just. The remaining finding concerns whether the quo warranto doctrine prevented SOS from bringing suit. It is apparent the trial court did not rely extensively on the finding that quo warranto prevented SOS from bringing suit. If SOS lacked standing to bring suit due to quo warranto, the appropriate remedy would have been dismissal, rather than rendering final judgment in favor of Lazy 9. It is, therefore, apparent the trial court relied primarily on its other findings. We do not believe our opinion modified the trial court's judgment sufficiently to affect the trial court's determination of whether the award of attorney's fees to Lazy 9 was equitable and just.

### H.B. 3565 Unconstitutional on its Face

Last, SOS contends this Court should grant rehearing as to whether H.B. 3565 constitutes an unconstitutional delegation on its face. *Compare* TEX. CONST. art. XVI, § 59 *with* Act of May 28, 2003, 78th Leg., R.S., ch. 1158, 2003 Tex. Gen. Laws 3268. According to SOS, the twenty-day notice requirement contained in the bill causes the bill to be unconstitutional on its face since it conflicts with the thirty-day notice requirement contained in the Texas Constitution. In addition, SOS contends the bill is unconstitutional because the Texas Constitution requires the notice to local governmental entities to be at least thirty days *before* the election, but the bill only requires notice no later than thirty days *after* the election.

The Texas Constitution requires notice must be given of a bill which creates a conservation and reclamation district. Section 59(d) of the Texas Constitution provides as follows:

No law creating a conservation and reclamation district shall be passed unless notice of the intention to introduce such a bill setting forth the general substance of the contemplated law shall have been published at least thirty (30) days and not more than ninety (90) days prior to the introduction thereof in a newspaper or newspapers having general circulation in the county or counties in which said district or any part thereof is or will be located and by delivering a copy of such notice and such bill to the Governor who shall submit such notice and bill to the Texas Water Commission, or its successor, which shall file its recommendation as to such bill with the Governor, Lieutenant Governor and Speaker of the House of Representatives within thirty (30) days from date notice was received by the Texas Water Commission. Such notice and copy of bill shall also be given of the introduction of any bill amending a law creating or governing a particular conservation and reclamation district if such bill (1) adds additional land to the district, (2) alters the taxing authority of the district, (3) alters the authority of the district with respect to the issuance of bonds, or (4) alters the qualifications or terms of office of the members of the governing body of the district.

TEX. CONST. art. XVI, § 59(d). Section 59(e) requires notice as provided in subsection (d) to the county commissioners court of the affected counties. *See* TEX. CONST. art. XVI, § 59(e).

H.B. 3565, though, provides that Lazy 9's board of directors must give notice of an election for division of the district "not later than the 20th day before the election." Act of May 28, 2003, 78th Leg., R.S., ch. 1158, § 14, 2003 Tex. Gen. Laws 3268, 3274. In addition, the board must provide notice "not later than the 30th day after the date of the election" to the Texas Commission on Environmental Quality, the attorney general, the commissioners court of each county, and any municipality with extraterritorial jurisdiction over the land within each new district. *Id.*

It is not entirely clear that the notice provision of the Texas Constitution applies to the division of a district under H.B. 3565. However, it is not necessary for us to decide that issue. Assuming the constitutional notice provision does apply, SOS' argument that our opinion erred in failing to hold the bill was unconstitutional on its face still fails. SOS did not raise this issue until its motion for rehearing, and the notice provisions of the bill do not foreclose proper notice under the Texas Constitution.

■■■■ SOS did not argue the bill was unconstitutional on its face until its motion for rehearing. Although SOS did argue that Lazy 9's ability to divide violates the notice requirement of the Texas Constitution, it did not advance in its brief or at oral argument the contention that the differences in the statute's notice requirements from the Texas Constitution's notice requirements cause the bill to be unconstitutional on its face. This argument cannot be raised at this point in the proceedings. "Rehearing is not an opportunity to test alternative arguments after finding other arguments unsuccessful." *ICM Mortgage Corp. v. Jacob*, 902 S.W.2d 527, 535 (Tex. App.-El Paso 1994, writ denied) (op. on reh'g); *see Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 400 (Tex. App.-Texarkana 2003, pet. denied) (op. on reh'g). A motion for rehearing is an inappropriate time to raise new arguments.

■■■■ Even if this issue had been raised, the difference between the notice requirements under H.B. 3565 and Article XVI, Section 59 of the Texas Constitution does not render the bill unconstitutional on its face. Although the bill contains different

notice requirements, the bill does not conflict with the notice requirement contained in the Texas Constitution, if applicable. While it is a wise policy for statutes to comply with minimum constitutional requirements, there is nothing in the statute which would prohibit providing the appropriate notice required by the Texas Constitution. Lazy 9 can still comply with the notice requirements of the Texas Constitution, if applicable, even though the notice provisions differ from the notice requirements of H.B. 3565. We overrule SOS' contention that the bill is unconstitutional on its face.

## Conclusion

The trial court did not err in excluding evidence concerning notice under subsection (d) of Article XVI, Section 59 of the Texas Constitution. Because SOS failed to cite sufficient authority, advance any legal analysis, or apply the appropriate standards to the facts of this case, the separation of powers argument was inadequately briefed. Our opinion did not modify the trial court's judgment sufficiently to affect the trial court's determination of whether the award of attorney's fees to Lazy 9 was equitable and just. Therefore, we reject SOS' argument that the issue of attorney's fees must be remanded to the trial court. We also reject SOS' argument that H.B. 3565 constitutes an unconstitutional delegation on its face. It is improper for SOS to raise new issues in a motion for rehearing. At any rate, the differences between the notice requirements under H.B. 3565 and Article XVI, Section 59 of the Texas Constitution do not render the bill unconstitutional on its face.

Accordingly, we overrule SOS' motion for rehearing.