

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-13-00331-CV
_____

ALICIA FOUST, APPELLANT

V.

DON E. HEFNER, CPA, APPELLEE

On Appeal from the 99th District Court
Lubbock County, Texas
Trial Court No. 2012-502,047, Honorable William C. Sowder, Presiding

August 12, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Alicia Foust (Foust) appeals from a judgment awarding Don E. Hefner (Hefner) sanctions against her. After terminating her employment with Hefner, Foust sued him for defamation, business disparagement, and the recovery of unpaid overtime. Before trial, Hefner moved the trial court to award him sanctions.[1] The suit was tried by the

---

[1] Hefner asserted in his motion that "[b]oth pleadings have a claim, defense or other legal contention that is not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law and each allegation or other factual contention in the pleadings does not have evidentiary support, even after a reasonable opportunity for further investigation or discovery. Respondent's pleadings were presented for an improper purpose, to harass Movant."

court, and by the time of trial, Foust had abandoned her claim for business disparagement. Ultimately, the trial court awarded Foust unpaid overtime due her from Hefner but denied her defamation claim. It also granted Hefner sanctions in the amount of $5,271.75 against both Foust and her attorney. The sum represented the amount of attorney's fees purportedly incurred by Hefner in defending against the defamation claim. On appeal, we are asked to determine whether the trial court abused its discretion in levying such sanctions. We conclude that it did.

*Authority*

Hefner moved for sanctions under section 10.001 *et seq.* of the Texas Civil Practice and Remedies Code. Per that statute, the signing of a pleading or motion constitutes a certificate by the person that, to the signatory's best knowledge, information, and belief, formed after reasonable inquiry, 1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; 2) each claim, defense, or other legal contention asserted is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; 3) each allegation or factual assertion has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and 4) each denial is warranted on the evidence or is reasonably based on a lack of information or belief. TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2002). Furthermore, a court determining that a person signed such pleading or motion in violation of section 10.001 may sanction either or both the signatory and the party represented by the person. *Id.* § 10.004(a).

Yet, before sanctions may issue, the presumption that the signatory acted in good faith must be rebutted, and the burden to do so lies with the movant. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009). We further note that the pertinent window through which the court considers the matter is that existing when the petition or motion is filed. *See R.M. Dudley Const. Co., Inc. v. Dawson*, 258 S.W.3d 694, 711 (Tex. App.—Waco 2008, pet. denied) (stating that sanctions for frivolous or groundless pleadings do not apply to an action later determined to be groundless after the pleading was filed). Consequently, a plaintiff's failure to convince the ultimate factfinder to render a favorable verdict does not *ipso facto* entitle the opposition to sanctions. Nor is it enough that the plaintiff unsuccessfully attempted to pursue an unpopular claim or one which other attorneys would have eschewed. Unless it is shown that the certification created by section 10.001 was false or breached, sanctions cannot issue under section 10.001 *et seq.* of the Civil Practice and Remedies Code.

Finally, whether the court erred in levying sanctions depends upon whether it abused its discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). That occurs when the trial court "acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Id*.

*Discussion*

Here, the sanctions levied arose from Foust's effort to pursue her cause of action for defamation. The allegedly defamatory statements were made by Hefner during a phone call. The parties to the call were Hefner and Travis, the latter being a friend of Foust. Travis agreed to place the call while posing as a prospective employer inquiring about Foust. The latter had left her job with Hefner, applied for others, and had

encountered little success in finding new employment. Thus, she engaged her friend to help discover what Hefner may have been saying about her to prospective employers.

During the phone conversation, which was recorded, Hefner indicated that he often had to finish Foust's work and described her as jealous and abrasive. He also stated that "[a]nd this last time, she deleted her client e-mails and she or her husband, one, unplugged the file server cables, and I had to have my IT people come over and fix that." When asked by his trial counsel whether these acts of "vandalism really only affected her work area," Hefner replied, "That's right. That and the file server, which was not in her work area." Foust denied having "vandalized" the office or her computer.

As previously mentioned, one of the two claims upon which trial was had met with favor. That is, the trial court awarded Foust past overtime but denied recovery for the purported defamation. It also concluded, in its judgment, that the defamation claim 1) "was presented for an improper purpose," 2) was "not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law," and 3) lacked "evidentiary support and . . . [was] not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." So too did it explain, via the judgment, that the claim was improper or unwarranted under the law because Foust "instigated" the purportedly defamatory utterance from Hefner.

Following entry of the judgment, the trial court also executed findings of fact and conclusions of law. Included therein was the following:

> A reasonable inquiry by J. Craig Johnston, as required by CPRC Sec. 10.001 would have disclosed to him that the defamation claim pursued by him on Foust's behalf was not warranted by existing law and that such allegations of defamation did not have evidentiary support. There was no evidence presented on causation of any alleged defamatory statement and the damages claimed by Foust.

4

. . . At trial, J. Craig Johnston made no arguments, nonfrivolous or otherwise, for the extension, modification or reversal of existing law regarding the defamation claim.

* * *

The facts and equities of this case are such that Hefner is entitled to relief, jointly and severally, from Foust and J. Craig Johnston under the Texas Civil Practices and Remedies Code Section 10.001 et seq. And specifically Section 10.001 (1), (2) and (3), due to the filing of an unwarranted defamation claim by Foust and her attorney against Hefner . . . [and]

Foust's defamation claim was filed for an improper purpose.

In addressing the accuracy of the trial court's findings and decision, we initially note that it did not conduct a separate evidentiary hearing on the motion for sanctions before levying them.[2] So, we do not have before us sworn testimony from Foust's legal counsel describing the extent of his investigation, if any, into the factual or legal basis underlying the defamation claim or what he believed with regard to the components encompassed within section 10.001 of the Civil Practice and Remedies Code. While we cannot say that the absence of such evidence makes it impossible to find that section 10.001 was breached, it nonetheless inhibits our ability to construct the appropriate window through which the court views the dispute. Again, the pertinent window is that revealing what counsel thought, knew, or should have known when he signed the pleading or motion.

Next, one cannot deny that the common law recognizes a cause of action for defamation. *See Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013). Similarly indisputable is that recovery under the cause depends upon proving that the defendant 1) published a statement, 2) that defamed the plaintiff, 3) while either acting with actual

---

[2] It was carried along with the trial.

5

malice (if the plaintiff was a public official or public figure) or negligence (if the plaintiff was a private individual) regarding the truth of the statement. *Id.* at 61. The record before us contains, at the very least, evidence that Hefner told a third party that Foust vandalized his office and that the accusation was false, assuming, of course, one was to believe Foust's testimony. In comparing the latter evidence with the elements of defamation, it cannot be said that the claim lacked either legal or factual basis.

As suggested above, what troubled the trial court was the evidence that Foust "instigated" the call to Hefner or had her friend place it. In doing so, she invited the falsehood, according to the court. In so inviting the defamation, she purportedly vitiated the cause of action, and, in the trial court's view, that was something her trial counsel should have recognized. Yet, authority illustrates that alleged defamatory statements made to someone acting on behalf of the defamed individual does not alone render the suit groundless. *Frank B. Hall v. Buck*, 678 S.W.2d 612, 618 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (wherein the defamed hired the investigator to whom the disparaging remarks were said). Publishing defamatory comments to a person's agent may create a cause of action, as it did in *Buck*. Yet, the claim is lost if the defamatory statements are procured to create a lawsuit or invited by the complainant. *Id.* And, they are so procured or invited if the person induced them or knew in advance that they were likely to be forthcoming. *Id.*

According to the record before us, the circumstances precipitating Foust's departure involved her perceived inability to be "consistent" in appearing for work; they had nothing to do with her engaging in criminal conduct such as vandalism. So, we may assume *arguendo* that Foust could or should have expected Hefner to give her a less than glowing reference when Travis placed the call. Yet, nothing in the recorded

6

conversation indicated that Travis induced or baited Hefner into accusing Foust of vandalism. And in view of the absence of evidence suggesting that vandalism was the cause of or played any role in Foust's decision to end her employment relationship with Hefner, one can reasonably debate about whether she or Travis could or should have expected that Hefner would accuse her of such criminality. We couple the latter observation with the absence of evidence suggesting trial counsel for Foust had reason to doubt the veracity of his client's foreseeable testimony about not having engaged in such illegal activities. And, when so combined, they lead us to conclude that no reasonable basis existed upon which the trial court could have found that the defamation claim lacked arguable basis in law or fact (when the pleading was signed) simply because a friend of Foust placed the call.

Nor can it be said that section 103.004 of the Texas Labor Code vitiated Foust's claim of legal or factual basis. The immunity granted ex-employers who talk about ex-employees in that statute does not encompass comments "known by that employer to be false at the time the disclosure was made or [disclosures] . . . made with malice or in reckless disregard for the truth or falsity of the information disclosed." TEX. LABOR CODE ANN. § 103.004(a) (West 2006). Admittedly, the statute placed upon Foust and her attorney the obligation to clear a higher legal hurdle before recovering. Yet, it did not indicate that they could not recover. Nor did it obligate them to forego pursuing recovery for what was perceived to be a false accusation, especially when Foust would testify, under oath, that the accusation was false.

As for the trial court's statement that "no evidence [was] presented on causation of any alleged defamatory statement and the damages claimed by Foust," we have several concerns. First, the finding suggests that the trial court levied sanctions by

7

focusing upon what Foust may or may not have proved at trial, as opposed to what trial counsel thought, believed, or should have known or discovered when he signed the pleadings. Losing at trial does not alone prove that the cause of action lacked present or reasonably potential legal or factual basis (or was offered for an improper purpose) at the time when the pleadings were signed. Second, the purportedly false utterance accused Foust of vandalism, that is, a type of criminal conduct. *See* TEX. PENAL CODE ANN. § 28.03(a)(1)&(2) (West 2011) (stating that one commits a criminal offense when he, without effective consent, intentionally or knowingly damages the tangible property of the owner, or intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner). Falsehoods of that ilk not only are defamatory per se but also are presumed to cause the defamed nominal damages. *See Medical Gardens, LLC v. Wikle*, No. 07-12-00011-CV, 2013 Tex. App. LEXIS 6699, at *3-4 (Tex. App.—Amarillo May 29, 2013, no pet.) (mem. op.). Thus, it was inappropriate to consider the claim groundless from its inception due to the absence of evidence illustrating a causal link between the utterance and injury since one was to presume the existence of nominal damages as a matter of law (assuming, of course, that Foust proved the other elements of her claim).

As for the finding that the defamation claim was asserted for an "improper purpose," the latter phrase has been construed as equivalent to "bad faith" under Texas Rule of Civil Procedure 13. *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 195 (Tex. App.—Texarkana 2011, no pet.); *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.,* 198 S.W.3d 300, 321 (Tex. App.—Texarkana 2006, pet. denied). Moreover, under Rule 13, establishing "bad faith'' requires proof of "conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose." *Save Our Springs Alliance, Inc. v.*

8

*Lazy Nine Mun. Util. Dist.*, 198 S.W.3d at 321; *Stites v. Gillum*, 872 S.W.2d 786, 795 (Tex. App.—Fort Worth 1994, writ denied). As previously mentioned, we are not privy to the mental processes in which Foust's attorney engaged when signing the original petition. And, while someone's *mens rea* may be discerned from circumstantial evidence, *Anaya v. State*, 381 S.W.3d 660, 666 (Tex. Crim. App. 2012, pet. ref'd), none appears of record here from which one can reasonably infer that counsel for Foust consciously sought to do wrong for a dishonest, discriminatory, or malicious purpose when including the defamation claim in the lawsuit. Certainly such a *mens rea* or desire cannot be inferred from simply losing at trial.

The tenor of the record leads us to conclude that Hefner failed to rebut the presumption that Foust's legal counsel acted in good faith when he signed the pleading that contained the defamation claim. As discussed above, there existed legal and factual basis to Foust's defamation per se claim given the evidence of record, and there was no evidence indicating that Foust's trial counsel acted in bad faith when he included the claim in the petition. Accordingly, we reverse the judgment insofar as it levied sanctions against Foust and her counsel and affirm the remainder of the judgment.[3]

Brian Quinn
Chief Justice

---

[3] Pending before the court is Hefner's motion to further sanction Foust and her attorney for pursuing a "frivolous" appeal. Given our decision on the merits of the appeal, we deny Hefner's motion. We do not know whether the effort to obtain sanctions arose from a desire to be an effective advocate or some animus developed over the course of the dispute. Nonetheless, litigants must factor caution and thought into their decision whether to pursue relief under Rule 13 of the Texas Rules of Civil Procedure and section 10.001 *et seq.* of the Texas Civil Practice and Remedies Code. Indeed, just as sanctions may be levied, in appropriate cases, for filing a frivolous pleading, so too may they be levied for filing a baseless motion for sanctions.