Opinion issued January 30, 2020



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00115-CV

_____

**DARRIN WINNER, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF LAND GUARDIAN, INC., Appellant**

**V.**

**AYMAN JARRAH, Appellee**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-04100**

---

## O P I N I O N

This is an appeal from the trial court's summary judgment dismissing claims asserted by Darrin Winner individually and derivatively on behalf of Land Guardian, Inc. ("LGI"). LGI is an entity formed by Ayman Jarrah to own and operate a bar in Houston, Texas. This suit arises from Jarrah's alleged breach of a

stock purchase agreement between him and Winner. In the course of the proceedings below, Winner judicially admitted that, under the agreement, Jarrah promised to transfer 10% of LGI's stock to Winner in exchange for Winner's promise, among other consideration, to allow LGI to use his company's liquor license. But because Texas law prohibits the holder of a liquor license from allowing another person to use the license, the trial court ruled that the agreement was void and unenforceable due to illegal consideration and accordingly dismissed Winner's claims.

In two issues, Winner contends that the trial court (1) erred in granting summary judgment and (2) abused its discretion in awarding Jarrah attorney's fees.

We affirm.

## Background

### *The Stock Purchase Agreement*

Darrin Winner and Clifford Kitten are life partners who met at the Brazos River Bottom ("the Bar"), located at 2400 Brazos in Houston, Texas ("the Property"). Winner eventually became the owner of the Brazos River Bottom Club, Inc. ("the BRB"), the entity that owned the Bar. And Kitten, through his family limited partnership, eventually became the owner of the Property.

For roughly seven years, Kitten leased the Property to the BRB, which owned and operated the Bar. But as the area changed and the Property fell into

2

disrepair, the Bar became less profitable, and Winner and Kitten began looking for a new tenant.

In the late summer of 2012, Winner and Kitten met Ayman Jarrah. Jarrah wanted to open a new club in the area and had formed a closely held corporation, Land Guardian, Inc. ("LGI"), to be the owner and holder of the lease. Jarrah decided that the Property was the ideal location for the new club, and he began negotiating with Winner, who acted on behalf of both Kitten and himself.

Ultimately, Winner and Jarrah settled on a deal whereby Winner would become a minority shareholder in LGI ("the Stock Purchase Agreement"). Under the Stock Purchase Agreement, Jarrah promised to transfer 10% of LGI's stock to Winner, and Winner promised to (1) terminate BRB's lease with Kitten so that Kitten could enter into a new lease with LGI, (2) allow LGI to use BRB's liquor license until LGI acquired its own, and (3) allow LGI to use an adjacent parking lot owned by Winner for customer and employee parking. The one caveat was that Winner would not begin to receive his share of the profits until Jarrah recouped his expenses from renovating the Property. The parties did not memorialize their agreement in writing.

BRB terminated its lease with Kitten; Kitten entered into a new lease with LGI; and a new club, the Gaslamp, opened at the Property. At some point, Jarrah and Winner's relationship deteriorated, with Winner accusing Jarrah of failing to

3

fairly distribute LGI's profits, refusing to allow Winner to inspect LGI's books and records, and engaging in various other related misconduct.

### The first lawsuit

In October 2015, Winner filed suit against Jarrah, asserting claims both individually and derivatively on behalf of LGI. Jarrah filed a no-evidence motion for summary judgment, arguing in part that there was no evidence that Winner was a shareholder of LGI. Winner responded that he "paid consideration" for LGI stock and that the consideration included his "allowing LGI to temporarily use the liquor license [he] controlled until it received its own." Winner supported his response with an affidavit in which he described BRB's liquor license as having "substantial value." Winner also filed an amended petition, which alleged that he agreed to allow LGI to use BRB's liquor license as partial consideration for the LGI stock.

The trial court denied Jarrah's no-evidence motion for summary judgment. Winner filed a notice of nonsuit, and the trial court dismissed Winner's claims without prejudice.

### The current lawsuit

Shortly after the dismissal of the first lawsuit, Winner initiated the current lawsuit, filing an original petition that asserted claims derivatively on behalf of LGI. Jarrah answered and filed a third-party petition, seeking a declaratory judgment that Winner is not a shareholder in LGI. Winner then filed an original

counterclaim, asserting individual claims for breach of contract and fraud. Winner's original and live pleadings (his second amended petition and second amended counterclaim) continued to allege that he agreed to allow LGI to use BRB's liquor license as partial consideration for 10% ownership in LGI.

Trial was set for the August 20, 2018 docket, and the parties were assigned an August 29 trial date. The parties were called for trial and appeared at an August 13 docket call.

Among other pre-trial motions, Jarrah filed a Rule 166(g) motion, arguing that the Stock Purchase Agreement was based on illegal consideration—Winner's promise to allow LGI to use BRB's liquor license. Jarrah also filed a motion for summary judgment, which further developed the argument made in his Rule 166(g) motion. In his motions, Jarrah explained that the Texas Alcoholic Beverage Code prohibits the holder of a liquor license from sharing its license with another person. *See, e.g.*, TEX. ALCO. BEV. CODE § 11.05 ("A permittee may not consent to or allow the use or display of the permittee's permit by a person other than the person to whom the permit was issued."). Thus, Jarrah argued, the Stock Purchase Agreement was based on illegal consideration and therefore void and unenforceable. As a result, Jarrah concluded, Winner did not have viable claims.

On August 28, the trial court held a telephone hearing on Jarrah's motions. The trial court set the motions for hearing on September 27 and granted Winner

5

leave to file a response. The trial court did not, however, grant leave for the parties to amend their pleadings or take any other action.

Nevertheless, after the telephone hearing, on September 13, 2018, Winner filed a third amended petition and third amended counterclaim. Both amended pleadings omitted Winner's former (and repeated) allegation that part of the consideration he paid for the LGI stock included LGI's temporary use of BRB's liquor license.

In addition to the third amended pleadings, Winner also filed a response to Jarrah's motion for summary judgment. Winner argued that there was no evidence that the Stock Purchase Agreement was illegal because his third amended pleadings no longer alleged that the use of BRB's liquor license was part of the consideration paid for the stock. Winner supported his response with an affidavit. In the affidavit, Winner explained that, when Kitten and he began negotiating the new lease with Jarrah, they told Jarrah that they could not allow him to use BRB's liquor license because they planned to reopen the Bar in a new location. Thus, BRB's liquor license was not part of the consideration Winner paid for the LGI stock. According to Winner, it was only after they had determined that they would not be able to reopen the Bar in a new location—and after the parties had executed the new lease and Stock Purchase Agreement—that they agreed to allow LGI to use BRB's liquor license until it obtained its own.

Jarrah filed a motion to strike Winner's third amended petition and third amended counterclaim. Jarrah observed that throughout the entire first case Winner had repeatedly and consistently alleged that the consideration he paid for the shares included his "allowing LGI to temporarily use [BRB's] liquor license" and had even described the liquor license as having "substantial value." Jarrah further observed that Winner had maintained the same position throughout the entire second case, including after Jarrah asserted illegality as an affirmative defense in his answer, after Jarrah explained the basis of the defense in his responses to Winner's interrogatories, and after the parties were called for trial and appeared for their docket call. It was not until after Jarrah filed his pre-trial Rule 166(g) motion and motion for summary judgment that Winner changed his position and alleged that the only consideration he had paid for the LGI stock was his promise to terminate BRB's lease so that LGI and Kitten could enter into a new one. Jarrah therefore argued that Winner's amended pleadings should be struck because they were filed without leave of court, were calculated to surprise and prejudice Jarrah, and, if permitted, would reshape the nature of the suit.

Winner responded by filing an amended affidavit. In the amended affidavit, Winner stated that consideration is a legal concept that he had misunderstood and misused in his previous affidavits:

> I am not a lawyer. I generally understand consideration to mean that one party provides something of value. As explained further below

and in my September 17, 2018 affidavit, after I owned an interest in [LGI], I allowed [LGI] to operate with the BRB liquor license. Based on my understanding of what consideration means, I do not understand why the 2016 testimony may conflict with the testimony in my September 17, 2018 affidavit.

In three orders, the trial court (1) struck Winner's third amended petition and third amended counterclaims, finding that they were filed after the date scheduled for trial without leave of court, (2) struck Winner's amended affidavit under the sham affidavit rule, finding that it conflicted with his prior sworn testimony without providing a sufficient explanation for the conflict, (3) ruled that the Stock Purchase Agreement was supported by illegal consideration and therefore void, (4) declared that Winner is not an LGI shareholder and therefore lacks standing to sue derivatively on LGI's behalf, (5) dismissed Winner's individual and derivative claims with prejudice, and (6) awarded Jarrah attorney's fees under the Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. CODE § 37.009.

Winner appeals.

## Summary Judgment

In his first issue, Winner argues that the trial court erred in granting summary judgment because Jarrah failed to prove as a matter of law that the Stock Purchase Agreement is supported by illegal consideration and therefore void.

## A.    Standard of review

We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84. If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan*, 555 S.W.3d at 84. In reviewing the grant of summary judgment, we must credit evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in his favor. *Id.*

## B.    Analysis

### 1.    Winner judicially admitted that the Stock Purchase Agreement was based in part on illegal consideration.

Under the TABC, the holder of a liquor license is prohibited from allowing another person to use its license. TEX. ALCO. BEV. CODE § 11.05 ("A permittee may not consent to or allow the use or display of the permittee's permit by a person other than the person to whom the permit was issued.").[1] And under Texas contract law, a contract that requires a violation of the TABC is void and unenforceable. *Merry Homes, Inc. v. Chi Hung Luu*, 312 S.W.3d 938, 946 (Tex.

---

[1]    *See also* TEX. ALCO. BEV. CODE § 109.53 ("No person shall . . . consent to the use of or allow his permit to be displayed by or used by any person other than the one to whom the permit was issued.").

9

App.—Houston [1st Dist.] 2010, no pet.) ("Any contract or lease that requires a violation of this statute [the TABC] is void."). A contract supported by illegal consideration is likewise generally considered void. *In re Kasschau*, 11 S.W.3d 305, 313 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) ("As a general rule, where part of the consideration for an agreement is illegal, the entire agreement is void if the contract is entire and indivisible."). Thus, if Winner promised to allow LGI to use BRB's liquor license as partial consideration for LGI stock, then the Stock Purchase Agreement is supported by illegal consideration and therefore void and unenforceable.

Here, Jarrah contends, and the trial court found, that Winner judicially admitted that he promised to allow LGI to use BRB's liquor license as partial consideration for a 10% interest in LGI. We therefore consider whether Winner made such a judicial admission.

A judicial admission occurs when a party makes a statement of fact that conclusively disproves a right of recovery or defense he currently asserts. *H2O Sols., Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 617 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). A judicial admission has conclusive effect and bars the admitting party from later disputing the admitted fact. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001). A party can make a judicial

admission in pleadings, motions, responses, and affidavits. *See id.* (motions and responses); *H2O Sols.*, 438 S.W.3d at 616–21 (pleadings and affidavits).

A statement qualifies as a judicial admission if: (1) it is made in the course of a judicial proceeding, (2) it is contrary to an essential fact or defense asserted by the party, (3) it is deliberate, clear, and unequivocal, (4) it is not destructive of the opposing party's theory of recovery or defense, and (5) enforcing it as a judicial admission would be consistent with public policy. *H2O Sols.*, 438 S.W.3d at 617.

Throughout the course of both lawsuits, Winner repeatedly and consistently stated that he agreed to allow LGI to use BRB's liquor license as partial consideration for the LGI stock.

In the first lawsuit, Winner made the allegation in his live pleading: "In exchange for BRB agreeing to terminate its lease and allow LGI to lease the Premises in its stead and allowing LGI to use its liquor license, Mr. Winner received 10% of LGI." He made the allegation in his response to Jarrah's no-evidence motion for summary judgment: "Winner paid consideration for the shares by: a. releasing the lease Winner controlled on the property to LGI so that LGI could operate its business on the premises; b. allowing LGI to temporarily use the liquor license Winner controlled until it received its own; c. allowing LGI to temporarily control an adjacent parking lot Winner controlled which allowed LGI customers parking; and d. allowing LGI employees to park in the adjacent parking

11

lot Winner controlled for free." And he made the allegation in the affidavit attached to his response: "I paid consideration for the shares by a) releasing the lease I controlled on the property to LGI so that LGI could operate its business on the premises, b) allowing LGI to temporarily use the liquor license I controlled until it received its own, c) allowing LGI to temporarily control an adjacent parking lot I controlled which allowed LGI customers parking, and d) allowing LGI employees to park in the adjacent parking lot I controlled for free." In his affidavit, he even described the liquor license as having "substantial value."

In the second and current lawsuit, Winner made the allegation in his original pleadings, his first amended pleadings, and his live pleadings. In his second amended petition, Winner alleged: "In exchange for BRB agreeing to terminate its lease and allow LGI to lease the Premises in its stead and allowing LGI to use its liquor license, Defendant promised Mr. Winner 10% of LGI." In his second amended counterclaim, Winner likewise alleged: "Among other consideration, in exchange for BRB agreeing to terminate its lease, allowing LGI to lease the Premises in its stead, allowing LGI to use BRB's liquor license, and allowing LGI to use a parking lot Oaks Ranch LLC has under lease, Winner received 10% of LGI."

Winner's statements were made in the course of judicial proceedings. Winner's statements are contrary to a fact essential to his theory of recovery, i.e.,

12

that the parties entered into a valid and enforceable Stock Purchase Agreement. Winner's statements were deliberate, made under the guidance of counsel in furtherance of his claims. Winner's statements are clear and unequivocal about what he paid in consideration for the LGI stock. Winner's statements are not destructive of Jarrah's defense. In fact, they support it. Finally, enforcing Winner's statements as judicial admissions is consistent with public policy. *See* TEX. ALCO. BEV. CODE § 1.03 ("This code is an exercise of the police power of the state for the protection of the welfare, health, peace, temperance, and safety of the people of the state."); *Merry Homes*, 312 S.W.3d at 946 ("[W]e must not enforce an illegal contract, 'particularly where the contract involves the doing of an act prohibited by statutes intended for the protection of the public health and welfare.'" (quoting *Peniche v. Aeroméxico*, 580 S.W.2d 152, 155 (Tex. App.—Houston [1st Dist.] 1979, no writ)). We hold that Winner's statements qualify as judicial admissions.

Thus, Winner's statements conclusively prove that, in exchange for a 10% interest in LGI, Winner promised, among other consideration, to allow LGI to use BRB's liquor license. *See Holy Cross Church of God in Christ*, 44 S.W.3d at 568. Because the TABC prohibits the holder of liquor license from allowing another person to use the license, TEX. ALCO. BEV. CODE §§ 11.05, 109.53, Winner's

statements further prove that the Stock Purchase Agreement was supported by illegal consideration.

## 2. The illegal consideration is not severable from the rest of the agreement.

Winner argues that the Stock Purchase Agreement is still enforceable because the illegal consideration can be severed from the rest of the agreement. We disagree.

The severability doctrine only applies when the original consideration for the contract is legal. *In re Kasschau*, 11 S.W.3d at 313 ("The doctrine of severability is an exception that applies in circumstances in which the original consideration for the contract is legal, but incidental promises within the contract are found to be illegal."); *see also Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 587 (Tex. App.—Dallas 2006, no pet.) (same); *Montgomery v. Browder*, 930 S.W.2d 772, 778 (Tex. App.—Amarillo 1996, writ denied) (same). That is not the case here. Because the illegal portion of the Stock Purchase Agreement was part of the original consideration Winner paid for the stock, it is not severable from the remainder of the agreement.

## 3. The trial court did not abuse its discretion in striking Winner's third amended pleadings and amended affidavit.

Winner further contends that the trial court abused its discretion in striking his third amended pleadings and his amended affidavit. Winner insists that these

amended filings clarified that the use of BRB's liquor license was not, in fact, part of the consideration he paid for the LGI stock, thereby rebutting the basis of Jarrah's dispositive motions. *See Lujan*, 555 S.W.3d at 84 (trial court's refusal to consider evidence under sham affidavit rule reviewed for abuse of discretion); *Air Prods. & Chems., Inc. v. Odfjell Seachem A/S*, 305 S.W.3d 87, 92 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (trial court's decision whether to allow amendment of pleadings reviewed for abuse of discretion). We consider each type of amended filing in turn.

We begin with Winner's third amended pleadings. Under our procedural rules, a trial court may strike an amended pleading upon a showing of surprise or prejudice to the other party. *Air Prods. & Chems., Inc.*, 305 S.W.3d at 92; *see* TEX. R. CIV. P. 63 ("Parties may amend their pleadings . . . as they may desire by filing such [pleadings] with the clerk at such time as not to operate as a surprise to the opposite party . . . ."). Here, the trial court could have struck Winner's third amended pleadings on either of these grounds.

Winner filed his third amended pleadings on September 13, 2018—after the date scheduled for trial, after the parties appeared for a docket call, and, tellingly, after Jarrah filed his dispositive motions. Up until then, Winner had consistently and repeatedly stated that the use of BRB's liquor license was part of the consideration he paid for the LGI stock. Winner maintained this position over the

15

course of two lawsuits for nearly three years. Even when the parties were set to go to trial in the second lawsuit, Winner made no attempt to amend. It was not until after Jarrah filed his dispositive motions that Winner sought to amend his pleadings to modify the material terms of the Stock Purchase Agreement.

Under these circumstances, the trial court could have reasonably concluded that Winner's third amended pleadings were calculated to surprise and would have prejudiced Jarrah, who had already filed dispositive motions based on Winner's judicial admissions concerning the consideration paid for the LGI stock. *See Air Prods. & Chems., Inc.*, 305 S.W.3d at 95 (holding that trial court did not abuse discretion in striking amended pleadings when trial court "could have reasonably concluded that the amended pleadings . . . would have reshaped the litigation, prejudicing [opposing party] and possibly delaying the trial"); *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 827–28 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (holding that trial court did not abuse discretion in striking supplier's amended pleadings filed 10 days before original trial setting when opposing party's summary-judgment motion had already been filed and was pending before court and new allegations were not based on newly-discovered facts); *Perez v. Embree Constr. Grp., Inc.*, 228 S.W.3d 875, 883 (Tex. App.—Austin 2007, pet. denied) (holding that trial court did not abuse discretion in striking amended pleadings more than three years after case was filed, more than

nine months after amendment deadline, and around two months before trial). We hold that the trial court did not abuse its discretion in striking Winner's third amended pleadings.

We now turn to Winner's amended affidavit, which the trial court struck as a sham. Under the sham affidavit rule, if a party submits an affidavit that conflicts with the affiant's prior sworn testimony and does not provide a sufficient explanation for the conflict, a trial court may disregard the affidavit when deciding whether the party has raised a genuine fact issue to avoid summary judgment. *Lujan*, 555 S.W.3d at 82. Here, the trial court made the following written findings in determining that Winner' amended affidavit was a sham:

> In an effort to explain this inconsistency, [Winner] executed yet a third Affidavit on September 23, 2018, which states that the problem is merely that "consideration" is a legal concept which was misunderstood or misused by him in his first affidavit. This explanation does not explain away that Mr. Winner has consistently listed use of the license as one of the deal points; in fact, one which he previously said had "substantial value." It matters not at all that it was referred to as "consideration." There was never any statement that it was not a deal point. At paragraph 6 the story changes yet again with the additional testimony that Winner only allowed LGI to use his license after he was already a 10% owner. No explanation is offered for this change. . . . Clearly, Winner's story, affidavit and pleadings changed when the Rule 166(g) Motion was filed. The Lujan Court directs the trial court to look at the explanation offered. The best Winner offers is that the license only came up after he was 10% owner, but just because the facts played out over months does not change the clear statement made several times for and by Winner that the 10% for the license swap, with other consideration, was the deal. The pleadings constitute judicial admissions and support the first affidavit. The first affidavit is supplemented with deposition

17

testimony. Winner's later affidavits to the contrary are shams as defined in the case law. The fact at issue is material and relevant. Explanations are offered but they do not explain away what is obvious to the Court.

Given Winner's consistent and repeated statement that he promised to allow LGI to use BRB's liquor license in exchange for LGI stock, and Winner's disavowal of that statement immediately after Jarrah observed that the promise violated the TABC, we cannot say that the trial court abused its discretion in disregarding Winner's amended affidavit under the sham affidavit rule.

**4.      The trial court did not err in dismissing Winner's claims.**

In sum, Winner judicially admitted that the Stock Purchase Agreement was supported by illegal consideration. As a result, the Stock Purchase Agreement is void. Winner does not have standing to assert derivative claims on behalf of LGI, as he never became an LGI shareholder. And Winner's individual claims fail as well, as a plaintiff cannot predicate a claim on his illegal act.

Accordingly, we overrule Winner's first issue.

**Attorney's Fees**

In his second issue, Winner argues that the trial court should not have awarded Jarrah attorney's fees under the Declaratory Judgments Act because (1) the subject of Jarrah's declaratory-judgment action was already before the trial court and (2) an award of attorney's fees is not equitable and just under the circumstances.

18

## A. Applicable law and standard of review

Under the Declaratory Judgments Act, the trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. But because the Declaratory Judgments Act is not available to settle disputes already pending before the trial court, *BHP Petrol. Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990), a mirror-image counterclaim for declaratory relief generally will not support an award of attorney fees, *Save Our Springs All., Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Directors*, 198 S.W.3d 300, 318 (Tex. App.—Texarkana 2006, pet. denied).

An exception to the mirror-image rule is when the plaintiff requests declaratory relief. *Id.* If the plaintiff requests declaratory relief, the mirror-image rule does not prohibit the trial court from awarding attorney fees, even if the defendant's counterclaim for declaratory relief merely duplicates the claims already raised by the plaintiff. *Id.*; *see Castille v. Serv. Datsun, Inc.*, No. 01-16-00082-CV, 2017 WL 3910918, at *11 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, no pet.) (mem. op.) ("[A] trial court is not prohibited from awarding attorney's fees to a defendant that asks the court to make a corresponding contrary declaration in a case where the plaintiffs have also brought a claim for declaratory relief."). This is because the Declaratory Judgments Act authorizes trial courts to determine that it is equitable and just to award attorney's fees to either party, so a

defendant who raises a mirror-image counterclaim in response to a plaintiff's declaratory-judgment claim cannot be said to have raised the counterclaim solely to pave the way for an award of otherwise-impermissible attorney's fees. *Castille*, 2017 WL 3910918, at *11.

Whether attorney's fees are available under the Declaratory Judgments Act is a question of law, which we review de novo. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 705–06 (Tex. App.—Houston [1st Dist.] 2007, no pet.). But we review the attorney fee award itself for an abuse of discretion. *Feldman v. KPMG LLP*, 438 S.W.3d 678, 686 (Tex. App.—Houston [1st Dist.] 2014, no pet.). An award is an abuse of discretion if it was made arbitrarily, unreasonably, or without regard to guiding legal principles. *Id.* In determining whether an award was an abuse of discretion, we view the evidence in the light most favorable to the trial court's ruling, indulging every presumption in its favor. *Id.*

## B. Analysis

Winner argues that the trial court erred in awarding attorney's fees because the subject of Jarrah's declaratory-judgment action was already before the trial court, which made fees unavailable under the mirror-image rule. We disagree.

As discussed above, when, as here, the plaintiff requests declaratory relief, the mirror-image rule does not prohibit the trial court from awarding attorney fees.

*See Castille*, 2017 WL 3910918, at *11; *Save Our Springs All.*, 198 S.W.3d at 318. Because Winner asserted a declaratory-judgment action first, and Jarrah responded by requesting a corresponding contrary declaration, the mirror-image rule did not prohibit the trial court from awarding Jarrah attorney's fees.

Winner further argues that the trial court abused its discretion in awarding attorney's fees because such an award was not equitable and just under the circumstances. He emphasizes the many instances where Jarrah recognized that he agreed to transfer 10% of LGI to Winner and contends that Jarrah should not be allowed to further profit from an illegal deal. We agree with Jarrah that Winner's argument fails to apply the applicable standard of review and instead attempts to re-argue the disputed facts and substitute his judgment for that of the trial court. Viewing the evidence in the light most favorable to the trial court, we cannot say the trial court abused its discretion in awarding attorney's fees when Winner filed suit in an attempt to enforce an illegal contract and then attempted to prolong the litigation by filing a sham affidavit.

Accordingly, we overrule Winner's second issue.

## Conclusion

We affirm.

Gordon Goodman
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.