COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| JAKE ROBERT MCGEHEE, A/K/A J. ROBERT MCGEHEE; AND JAMES THOMAS STEWART, A/K/A TOMMY STEWART, A/K/A JAMES THOMAS STEWART III, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LYNN MCGEHEE STEWART AND AS TRUSTEE OF THOSE CERTAIN TRUSTS ESTABLISHED UNDER THE STEWART REVOCABLE LIVING TRUST, U/T/D AUGUST 22, 2003, | § § § § § § § | No. 08-18-00166-CV |
| | | Appeal from the |
| | | 143rd District Court |
| | | of Reeves County, Texas |
| | | (TC# 16-09-21663-CVR) |
| Appellants, | § | |
| v. | § | |
| ENDEAVOR ACQUISITIONS, LLC, | § § | |
| Appellee. | | |

## O P I N I O N

Appellants Jake Robert McGehee, a/k/a J. Robert McGehee (McGehee); and James Thomas Stewart, a/k/a Tommy Stewart, a/k/a James Thomas Stewart III (Stewart), Individually and as Personal Representative of the Estate of Lynn McGehee Stewart and as Trustee of Those Certain Trusts Established Under the Stewart Revocable Living Trust, u/t/d August 22, 2003 (collectively, "Appellants") appeal from a take-nothing judgment in favor of Appellee Endeavor

Acquisitions, LLC (Endeavor). Appellants contend that the trial court erred by granting Endeavor's motion for summary judgment declaring enforceable a Purchase and Sale Agreement (PSA) between the parties, denying Appellants' contrary motion for summary judgment, and awarding Endeavor attorney's fees. We affirm.

## I. BACKGROUND

In November 2015, Endeavor sent a solicitation letter to Appellants offering to purchase certain property they owned in Reeves County, Texas. Appellants each owned an undivided 40 acres of surface estate out of a 160 acre portion of described property. Appellants also collectively owned one-half of the bonus and royalty interest under an oil and gas lease then existing on the property's mineral interest. With its mailing, Endeavor included a transmittal letter, two original PSAs, six original General Warranty Deeds (three for each Seller), and two IRS W-9 forms. The letter signed by Endeavor's president instructed that, if the terms of the offer were acceptable to Appellants, they should sign and date the enclosed PSA and General Warranty Deeds in front of a notary public, retain a copy of the originals for their own records, and return the remaining executed originals in the prepaid envelope supplied with the mailing. Also, Endeavor advised Appellants that, upon receipt of the executed documents, it would commence its title review of the identified property.

By its opening lines, the enclosed PSA stated that the agreement was entered into between Endeavor, defined as "Buyer," and McGehee and Stewart, jointly defined as "Seller." As Buyer, Endeavor offered to purchase the entirety of Appellants' surface and mineral interest for a total purchase price of $185,000. The terms further provided that upon Endeavor's receipt of executed originals of the PSA and the Warranty Deeds it would be permitted thirty days to review title to

2

the property. A closing would take place five days after expiration of the title review period, unless Endeavor, in its sole discretion, extended the review period and delayed the closing as reasonably necessary to properly conduct the required title review. The PSA also contained representations stating that it "has been duly executed and delivered on behalf of each of the parties and constitutes their legal and binding obligations enforceable in accordance with its terms" and that, "[a]t Closing, all documents and instruments required to be executed and delivered shall constitute legal, valid, enforceable, and binding obligations of the parties."

On receipt of the PSA, McGehee and Stewart each crossed out the purchase price amount of $185,000, inserted $200,000 instead, and initialed their changes. They then executed and returned the originals to Endeavor without any further changes. Most significantly, Appellants did not alter the term "Seller," as used throughout the PSA, to include both McGehee and Stewart jointly. Appellants additionally executed and returned the original Warranty Deeds that Endeavor had supplied. Those deeds stated by their recitals that the grantor "do[es] hereby grant, bargain, sell, convey, transfer, assign and deliver" to Endeavor all of the grantor's right, title, and interest in the described property.

Additional activity took place for several months afterward. In January 2016, Endeavor informed Appellants that it was extending the title review period and resetting the closing date to a date on or before March 9, 2016. In February 2016, Endeavor filed the executed Warranty Deeds in the property records of Reeves County, Texas. In March 2016, Endeavor sent each Appellant a check in the amount of $100,000. Appellants, however, informed Endeavor that it had refused to negotiate the checks that were tendered, contending that the PSA required payment of $200,000 for each individually. Endeavor disagreed on the ground that the PSA expressly

3

defined the term "Seller" as encompassing both McGehee and Stewart, and specifically provided that the "total Purchase Price shall be $200,000[.]"

After the original checks expired, Endeavor sent Appellants each a second check, dated April 21, 2016, in the amount of $100,000. These checks, like the original checks, stated that they were "VOID AFTER 45 DAYS." Forty-five days following April 21, 2016 fell on June 5, 2016.[1] McGehee deposited his check with his bank on May 31. On June 6, that bank notified him that the check was returned for insufficient funds, but that it was redepositing the check for his benefit. On June 15, McGehee's bank informed him that the redeposited check was returned because of a stop payment order. Stewart deposited his check with his bank on June 3. But on June 8 he learned that it was returned because of a stop payment order.

Endeavor acknowledges that it stopped payment on June 6 on Stewart's check and on June 9 or 10 on McGehee's check, because the 45-day period had ended, and the checks had expired. Endeavor states that it was not aware that Appellants had deposited the checks when it stopped payment.

Endeavor tendered payment to Appellants a third time by initiating two wire transfers of $100,000 each, one to McGehee on July 22, 2016, and one to Stewart on August 1, 2016. Appellants reversed and refused to accept the funds. By affidavit, the president of Endeavor asserted that he communicated to Appellants that the company remained ready, willing, and able to pay the agreed purchase price of $200,000.

---

[1] The actual 45th day following April 21, 2016, was June 5, 2016. Because that day was a Sunday, the 45th day was effectively the last banking day, which was June 4, 2016. The parties both use June 4, 2016, as the relevant expiration date.

Appellants filed suit against Endeavor in September 2016, seeking a judgment that declared the PSA and Warranty Deeds invalid because Endeavor breached the PSA by failing to tender the stated consideration. They requested that the court remove a cloud on their title created by the PSA and Warranty Deeds. Appellants later amended their petition to request rescission of the Warranty Deeds. Appellants requested an award of attorney's fees under the Declaratory Judgments Act.

In answer to Appellants' claims, Endeavor raised affirmative defenses including waiver and estoppel. Endeavor also asserted a counterclaim requesting a declaration that the PSA is a valid and enforceable contract providing for a total purchase price of $200,000. Like Appellants, Endeavor also requested an award of attorney's fees under the Declaratory Judgments Act.

Endeavor then moved for partial summary judgment, asserting as grounds that (1) the PSA is an enforceable contract, (2) the total purchase price under the PSA is $200,000, (3) the stop payment orders do not constitute a breach of the PSA, (4) Appellants are not entitled to rescission, and (5) Endeavor is entitled to recover attorney's fees, in an amount to be determined. Appellants countered with their own summary judgment motion, asserting as their sole ground that the PSA is void and unenforceable because Endeavor did not deliver to them an executed copy of the PSA at or prior to a closing (which never occurred) or prior to stopping payment on the second set of tendered checks. Endeavor did deliver an executed PSA to Appellants, but not until after this lawsuit was filed.

Appellants amended their pleadings twice more before the summary judgment hearing. At the time of the hearing, they sought a variety of declarations concerning the validity and enforceability of the PSA. Appellants also asserted claims for breach of contract, rescission,

5

removal of a cloud on title, and attorney's fees. In addition, they asserted that Endeavor is estopped from claiming that the PSA is a valid and enforceable contract.

After the trial court heard and considered both sides' summary judgment motions, responses, replies, and evidence, the court signed an order denying Appellants' motion and granting Endeavor's motion on all claims and issues except the amount of Endeavor's attorney's fees. After considering the attorney's fee issue by submission, the court signed its final judgment on August 16, 2018. In that judgment, the court ordered that Appellants take nothing on their claims against Endeavor, declared that the PSA is a valid and enforceable contract providing for a total purchase price of $200,000, and awarded Endeavor attorney's fees in the sum of $51,046, plus contingent fees on appeal. This appeal followed.

## II. DISCUSSION

Appellants raise three issues on appeal. They assert that the trial court erred as a matter of law by granting Endeavor's motion for summary judgment and awarding attorney's fees, and by denying their own cross-motion for summary judgment. As a foundation of their arguments, Appellants argue that the PSA is not a valid and enforceable contract.

### A. Standard of Review

#### 1. Motions for Summary Judgment

Summary judgments are reviewed *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment has the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Mann*, 289 S.W.3d at 848; TEX. R. CIV. P. 166a(c). "[A] defendant who

6

conclusively negates at least one essential element of a cause of action or conclusively establishes all the elements of an affirmative defense is entitled to summary judgment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).

"When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Mann*, 289 S.W.3d at 848. And where, as in this case, "the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Knott*, 128 S.W.3d at 216.

### 2. Entitlement to Attorney's Fees

"It is an abuse of discretion to award attorney's fees under the Declaratory Judgment Act when the statute is relied upon solely as a vehicle to recover such fees." *Crews v. Dkasi Corp.*, 469 S.W.3d 194, 203 (Tex. App.—Dallas 2015, pet. denied). "A trial court abuses its discretion if it acts without reference to any guiding rules and principles such that the ruling is arbitrary or unreasonable. But a trial court has no discretion in determining what the law is or applying law to facts." *Pressley v. Casar*, 567 S.W.3d 327, 333 (Tex. 2019) (citations and internal quotation marks omitted).

### B. Issues One and Three: Whether the trial court erred in granting Endeavor's motion for summary judgment while denying Appellants' cross-motion for summary judgment

Appellants contend in their first issue that the trial court erred by granting Endeavor's motion for summary judgment. They contend in their third issue that the trial court erred by denying their motion for summary judgment. Because the motions, in large part, sought opposing

7

declarations concerning the validity of the PSA, we will address the first and third issues together.

### 1. Contract Formation

#### a. Signature and Delivery

With their primary argument, Appellants contend that Endeavor's failure to deliver an executed PSA to them at or prior to a formal closing renders the PSA void and unenforceable. In opposition, Endeavor contends that longstanding contract law supports its position that the PSA is valid and enforceable, regardless of when, or even whether, it delivered an executed copy to Appellants. We begin with the applicable, fundamental principles of contract law.

A contract is established when proven by a preponderance of evidence that an offer is accepted, accompanied by consideration. *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc*., 246 S.W.3d 42, 71 (Tex. 2008). Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Products, Inc. v. S.S.I. Plastics, Inc*., 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Relevant to the subject matter at issue, the statute of frauds requires a contract for the sale of real estate to be in writing and signed by the party to be charged with the promise or agreement. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(4); *Copano Energy, LLC v Bujnoch*, 593 S.W.3d 721, 729-30 (Tex. 2020) ("To satisfy the statute of frauds, it is not enough that the writings state potential contract terms, . . . [t]he writings must evidence the *agreement* . . . so that the *contract* can be ascertained from the writing.").

As for the elements of a contract, "[w]here an offer prescribes the time and manner of

8

acceptance, those terms must ordinarily be complied with to create a contract." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Of note, a purported acceptance that changes a material term of an offer results in a counteroffer rather than acceptance. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 513–14 (Tex. 2014). Indeed, contracts require mutual assent, which, in the case of a written contract, is generally evidenced by the signatures of the parties and delivery with the intent to bind. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). "But while signature and delivery are often evidence of the mutual assent required for a contract, they are not essential." *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 277 (Tex. 2015).

In *Wright v. Hernandez*, we set out relevant contract principles on which Appellants in part rely:

- "[T]he absence of a party's signature does not necessarily destroy an otherwise valid contract and is not dispositive of the question of whether the parties intended to be bound by the terms of a contract."

- "[W]hen the terms of the contract make it clear that a signature is required, a party's failure to sign the agreement will render the agreement unenforceable."

- "Conversely, when there is no evidence in the record to suggest that the parties intended for a signature to be a condition precedent to the signing of an agreement, then a party's failure to sign the agreement does not render the agreement unenforceable, as long as it appears that the parties otherwise gave their consent to the terms of the agreement."

- "[A] parties' [sic] intent to be bound by a contract may be evidenced by its conduct at the time a contract is drafted and by its subsequent conduct reflecting that it was acting in accordance with the terms of the contract."

469 S.W.3d 744, 757-58, 760 (Tex. App.—El Paso 2015, no pet.).

As explained by the Texas Supreme Court, "Texas law recognizes that a contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual

assent. If a written draft of an agreement is prepared, submitted to both parties, and each of them expresses his unconditional assent thereto, there is a written contract." *Phillips*, 475 S.W.3d at 277; *see Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) (contract need not be signed to be executed); *W. Techs., Inc. v. Omnivations II, L.L.C.*, 583 S.W.3d 786, 793 (Tex. App.—El Paso 2019, no pet.) (contract may be accepted other than by signature; unsigned contract may be binding if parties mutually assent to terms). As this Court recognized in *Omnivations*, "[w]e must read the terms of the purported contract itself to decide whether an offer was conditioned on certain criteria or not." *Id*.

Here, the record establishes that Endeavor made a written offer to Appellants to purchase their interest in the subject property for a total purchase price of $185,000. The terms of the offer were contained in the PSAs included with Endeavor's transmittal letter. By means of its letter, Endeavor indicated that Appellants should sign the PSAs and Warranty Deeds before a notary public and return the executed originals if the offer was acceptable. We concluded in *Lujan v. Alorica*, 445 S.W.3d 443, 449 (Tex. App.—El Paso 2014, no pet.), that instructions of this nature manifested a requirement that a party accept an offer only by signing it. Specifically, the offeror in *Lujan* instructed, "[i]f the above is agreeable to you, please sign and date below and return to Human Resources." *Id*. The offeror twice more required acceptance by signature, once by characterizing the offeree's signature as "a condition of accepting this offer of employment," and again by stating that the offer letter, "when signed by you, sets forth the terms of your employment[.]" *Id.*

On review, we conclude that the solicitation letter of Endeavor prescribed the method by which Appellants could accept the enclosed offer to purchase their property. Although Appellants

10

generally followed Endeavor's instructions, they did not accept the initial offer but instead made a counteroffer by striking out the original purchase price of $185,000 and changing it to $200,000. *See Amedisys*, 437 S.W.3d at 513–14 ("Under the common law, an acceptance may not change or qualify the material terms of the offer, and an attempt to do so results in a counteroffer rather than acceptance."). The question that arises next, then, is whether Appellants in turn prescribed the method by which Endeavor could accept their counteroffer. In contrast to Endeavor's separate letter of instruction, Appellants do not contend on appeal that they prescribed the method of acceptance by any means other than the terms of the PSA itself. Consequently, the question at hand is narrowed to whether there is any language in the PSA requiring that Endeavor accept Appellants' counteroffer only by signing the PSA and delivering an executed copy to Appellants. In other words, we next consider whether there is any language in the PSA requiring Endeavor to sign it as a condition precedent to its validity. *See Mid-Continent Cas.*, 323 S.W.3d at 157–58.

Appellants point to the following language in the PSA as requiring Endeavor to execute and deliver the PSA before it has any binding effect:

> This Agreement has been duly executed and delivered on behalf of each of the parties and constitutes their legal and binding obligations enforceable in accordance with its terms. At Closing, all documents and instruments required to be executed and delivered shall constitute legal, valid, enforceable, and binding obligations of the parties.

Following our review of the highlighted text, however, we disagree. Nothing in the language prescribes a particular method required for Endeavor's acceptance of Appellants' counteroffer or requires Endeavor's signature and delivery of the PSA as a condition precedent to its validity. *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992) ("A condition precedent is an event that must happen or be performed before a right can accrue to enforce an

11

obligation."). The first sentence of the quoted provision is a representation that the PSA *has been* duly executed and delivered by each of the parties *and constitutes* their binding obligations. It does not state that the PSA *must be* executed and delivered by each of the parties *in order to constitute* their binding obligations. Stated conversely, it does not direct that the PSA is not binding *unless* it is executed and delivered by each of the parties. Similarly, the second sentence quoted above is a representation that documents required to be executed and delivered shall constitute valid and enforceable obligations at closing. It does not state that the PSA is valid and enforceable *only if* it is executed and delivered at closing.

Unlike the offer in *Lujan*, or even Endeavor's original offer, the PSA does not state that Endeavor's signature is a condition of accepting the offer or that the PSA sets forth the terms of the parties' agreement only when signed by Endeavor. *See Lujan*, 445 S.W.3d at 449. Therefore, the PSA does not supplant general contract law governing acceptance of an offer by means other than signature and delivery. *See Phillips*, 475 S.W.3d at 277; *Mid-Continent Cas.*, 323 S.W.3d at 157; *Omnivations*, 583 S.W.3d at 793; *Wright*, 469 S.W.3d at 760.

In sum, there is no language in the PSA requiring that Endeavor accept Appellants' counteroffer only by signing and delivering the PSA, and no evidence that Endeavor's signature and delivery are conditions precedent to the PSA's validity. *See Mid-Continent Cas.*, 323 S.W.3d at 157–58. The trial court correctly concluded that Endeavor's failure to sign and deliver the PSA did not render it invalid and unenforceable. This does not end our analysis, however, because Endeavor still bore the affirmative duty of establishing that the PSA is valid and enforceable.

b.  **Manifestation of Assent**

Although Endeavor was not required to sign and deliver the PSA in order to accept

Appellants' counteroffer, it was still required to accept the counteroffer by manifesting assent to its terms. *See Phillips*, 475 S.W.3d at 277; *Mid-Continent Cas.*, 323 S.W.3d at 157-58; *Lujan*, 445 S.W.3d at 448-49. Endeavor contends that it did so by tendering payment of the $200,000 purchase price.[2] We agree.

Endeavor's original offer was to pay a total purchase price of $185,000 for the property of both McGehee and Stewart. Appellants' counteroffer, as reflected by their alteration of the amount of the purchase price, required a total purchase price of $200,000. As Appellants did not change the definition of "Seller," which encompassed both McGehee and Stewart jointly, the counteroffer required a sum of $200,000 in total, not $200,000 each. Further, Appellants did not change any of the other terms originally offered by Endeavor. Endeavor's tender of the $200,000 purchase price thus constituted acceptance of Appellants' counteroffer and completed the formation of the PSA as a valid and enforceable contract. *See Phillips*, 475 S.W.3d at 277 (contract formed where written draft is prepared, submitted to both parties, and each expressed unconditional assent); *Frank's Casing*, 246 S.W.3d at 71 ("contract is established when . . . offer is accepted, accompanied by consideration").

Nevertheless, however, Appellants argue that there was no mutual assent to the PSA because Endeavor requested a stop payment order on the second set of tendered checks before the date on which those checks expired. But, as just discussed, Appellants assented by executing and delivering the PSA and Warranty Deeds, and Endeavor assented by tendering the first set of checks. The contract was fully formed at that time. *See Phillips*, 475 S.W.3d at 277; *Mid-*

---

[2] Endeavor also manifested assent to the terms of the PSA by letter to Appellants dated January 25, 2016. In that letter, Endeavor describes the PSA as an agreement Appellants entered into with Endeavor, and further specifically invokes the PSA provision permitting it to extend the review period and reschedule the closing.

*Continent Cas.*, 323 S.W.3d at 157-58; *Lujan*, 445 S.W.3d at 448-49. Moreover, in satisfaction of the requirements of the statute of frauds, the PSA included all essential elements of the agreement to include the signatures of Appellants (as parties to be charged with the promise or agreement) so that the contract could be ascertained from the writing without resort to oral testimony. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(4); *Copano*, 593 S.W.3d at 721.

In sum, Endeavor conclusively established its acceptance of Appellants' counteroffer and mutual assent to the terms of the PSA. The trial court did not err by concluding that the PSA is valid and enforceable notwithstanding Endeavor's failure to sign and deliver it.

### c. Necessity of a Formal Closing

In addition to their "lack of signature and delivery" argument, Appellants argue that the PSA was not valid and enforceable unless and until the parties conducted a formal closing, at which time payment and title would be exchanged. *See Bryant v. Cady*, 445 S.W.3d 815, 819 (Tex. App.—Texarkana 2014, no pet.) (describing usual procedure concerning conventional contract for sale of realty). Appellants do not cite any authority to support their assertion that failure to hold a formal closing on a contract for the sale of real property prevents the formation of the contract for sale. Indeed, such an argument defies logic by requiring that the contract be fully performed before it can be said to exist.

In addition, we agree with Endeavor that, in the circumstances of this case, conducting a formal closing would have been superfluous. "The law does not require the doing of a vain and useless thing[.]" *Mackey v. Lucey Prod. Corp.*, 150 Tex. 188, 239 S.W.2d 607, 608 (1951); *see Ware v. Miller*, 82 S.W.3d 795, 804 (Tex. App.—Amarillo 2002, pet. denied). Appellants' obligation under the PSA was to deliver executed Warranty Deeds, which they did. In fact,

Appellants urged in their motion for summary judgment that "[e]ach [Appellant] fully performed his obligation under the tendered PSAs . . . . Nothing remained to be done by [Appellants]." Endeavor likewise performed its obligation by tendering payment of the purchase price. Nothing further remained to be accomplished at a formal closing. Accordingly, Appellants' contention that the parties' failure to conduct a formal closing rendered the PSA invalid is overruled.

### d. Conditional Delivery of the PSA and Warranty Deeds

"When an instrument bearing the signature of one party is delivered with the intent that it not be binding until signed by the other party, the existence of the instrument is destroyed by the other party's failure to sign the instrument." *Lujan*, 445 S.W.3d at 448-49. Appellants now urge that they delivered the executed PSA with the intent that it not be binding until signed by Endeavor. They further urge that the existence of the PSA was accordingly destroyed by Endeavor's failure to sign it. *See id.* Appellants do not, however, identify any summary judgment evidence to establish the conditional intent that they now assert. In addition, that intent cannot be fairly inferred from the circumstances.

Appellants do not identify anywhere in the record where they gave any indication, prior to filing this lawsuit, that they did not intend their delivery of the executed PSAs to be binding unless and until Endeavor also signed each document. On the contrary, the only area of dispute identified by Appellants prior to filing suit concerned the amount of the purchase price. Nothing in the record supports Appellants' belated position that, at the time they delivered the executed PSAs, Appellants did not intend for them to be binding.[3]

---

[3] Because Appellants' execution and delivery of the revised PSA was a counteroffer, their contention that it was not binding unless Endeavor signed it is actually just a reiteration of the contract formation argument that Endeavor's signature was the required means of acceptance.

Appellants similarly argue that the effect of their delivery of the Warranty Deeds was limited by their subjective intent. "It is settled that title to transferred property will vest upon execution and delivery of the deed." *Stephens Cty. Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261 (Tex. 1974). But a party may overcome the presumption that a deed was delivered with the intent that it operates as a conveyance by showing that it was delivered for a different purpose. *Id.* at 262. Appellants assert that they delivered the executed Warranty Deeds with the intent only to trigger Endeavor's title review period, not with the intent that the deeds operate as conveyances. The only evidence Appellants cite in support of this assertion is a provision in the PSA itself stating that the title review period begins upon Endeavor's receipt of the executed Warranty Deeds. But that provision merely identifies one effect of delivery of the deeds. It does not constitute any evidence of Appellants' actual *intent* in delivering the executed deeds and therefore does not overcome the presumption that the deeds were delivered with the intent that they operate as conveyances. *See id.*

The record demonstrates that Appellants delivered the executed PSA and Warranty Deeds to Endeavor unconditionally. Upon delivery, the PSAs were binding on Appellants—as the parties to be charged—and the deeds effectively operated as conveyances of Appellants' property interests regardless of whether Endeavor[4] signed and delivered the PSA to Appellants. The trial court correctly concluded that there are no genuine issues of material fact regarding Appellants' intent that preclude the court from granting Endeavor's motion for summary judgment on the validity and enforceability of the PSA.

---

[4] The PSA was also binding on Endeavor once it accepted Appellants' counteroffer. Appellants' argument to the contrary notwithstanding, Endeavor has not taken the position that it is not bound by the PSA.

16

In addition, because Appellants effectively conveyed their interests in the property by executing and delivering the Warranty Deeds, the trial court did not err by granting summary judgment that Appellants take nothing on their claim to remove a cloud from their title. *See Swenson*, 517 S.W.2d at 261 (title vests on execution and delivery of deed); *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied) (plaintiff seeking removal of a cloud on title must prove an interest in the property).

In conclusion, the summary judgment evidence conclusively establishes that the PSA "is a valid and enforceable contract providing for a total purchase price of $200,000 covering all interests conveyed by Plaintiffs to Endeavor[.]" The trial court did not err by so declaring.

Accordingly, Appellants' challenges to that declaration are overruled.

### 2. Breach of Contract

Endeavor also sought summary judgment on the ground that stopping payment on the second checks issued to Appellants was not a breach of the PSA. Appellants contend that stopping payment was a breach of contract and that such breach excused them from any further performance under the PSA. *See Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) (material breach by one party excuses other party from any obligation to perform). Specifically, Appellants argue that Endeavor's breach relieved them of any obligation to accept Endeavor's third tender of payment. Appellants' argument is premised on the belief that Endeavor stopped payment on the checks before they expired. But the record is to the contrary.

The checks at issue are dated April 21, 2016, and each check states on its face that it is "VOID AFTER 45 DAYS." Accordingly, the checks expired by their own terms on June 4, 2016. Each Appellant deposited his check with his bank before that date, but there is evidence that the

17

checks were not presented to Endeavor's bank for payment until after that date. In any event, Endeavor's president stated in a summary judgment affidavit that he, on behalf of Endeavor, stopped payment on Stewart's check on June 6, 2016, and on McGehee's check on June 9 or 10, 2016. These dates, which both fall after the date on which the checks became void, are further reflected on the records of Endeavor's and Appellants' banks, respectively.

A letter dated June 15, 2016, to McGehee from his bank contains a copy of the returned check with a stop payment notation and the date of June 10, 2016. A letter to Stewart from his bank, dated June 8, 2016, states that the check was returned on June 7, 2016 due to a stop payment order. A second letter to Stewart from his bank, dated June 9, 2016, contains a copy of the returned check with a stop payment notation and the date of June 6, 2016. Finally, a stop payment report from Endeavor's bank shows that payment was stopped on McGehee's check on June 9, 2016, and payment was stopped on Stewart's check on June 6, 2016.

Appellants point out that the report from Endeavor's bank indicates that the origination date of the stop payment orders on Appellants' checks was June 2, 2016. They urge that this evidences a breach of contract by Endeavor because June 2 predates the expiration of the checks on June 4. But the alleged breach is not the mere filing of a stop payment order—nothing in the PSA precludes Endeavor from doing so. The alleged breach, as described in Appellants' brief, is "fail[ing] to make funds available for the purchase," *i.e.*, actually stopping payment on the checks.

The record conclusively establishes that payment was not actually stopped on Appellants' checks until June 6 for Stewart's check, and June 9 or 10 for McGehee's. This demonstrates that the stop payment requests filed before the June 4 expiration date were not applied to Appellants' checks until after that date. Those requests therefore did not impact the parties' rights under the

18

contract because the checks were already void by their own terms. In other words, even though Endeavor's requests were premature, they did not result in a breach of the PSA by failing to make funds available for the purchase because the funds were already unavailable.

The conclusion that Endeavor was not in breach of the PSA leads to the further conclusion that Appellants were not excused from performing their obligations under that contract. *Cf. Hernandez*, 875 S.W.2d at 692 (material breach by one party excuses other party). Consequently, Appellants' contention that they were entitled to reject Endeavor's third tender of the correct purchase price lacks merit.

The summary judgment record conclusively establishes that Endeavor did not breach the PSA by stopping payment on the second set of tendered checks.[5] The trial court did not err by granting summary judgment that Appellants take nothing on their claim for breach of contract.

Accordingly, for all the reasons discussed above, Appellants' first and third issues are overruled.

### C. Issue Two: Award of attorney's fees

The Declaratory Judgments Act ("Act") authorizes a court to "award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. All parties in this case invoked the Act and requested an award of attorney's fees pursuant to its provisions. Nevertheless, in their second issue on appeal, Appellants argue that Endeavor is not entitled to attorney's fees because the true nature of Appellants' claim is a claim to remove a cloud from their purported title. Regardless of how Appellants characterize their claim, however, we note that Endeavor clearly asserted its own claim for declaratory judgment after it

---

[5] Because of these holdings, we need not address the parties' arguments concerning merger, waiver, and estoppel.

had already been served with Appellants' petition. That claim supports an award of attorney's fees if it is properly cognizable under the Act in light of the claims asserted by Appellants. *See id.*

"A counterclaim that presents no new controversy[ ] but exists solely to pave the way to an award of attorney's fees is improper." *Howell v. Mauzy*, 899 S.W.2d 690, 706 (Tex. App.—Austin 1994, writ denied); *see Save Our Springs All., Inc. v. Lazy Nine Mun. Util. Dist.*, 198 S.W.3d 300, 318 (Tex. App.—Texarkana 2006, pet. denied). In other words, a party generally may not invoke the Declaratory Judgments Act to settle disputes that are already pending before the court. *BHP Petro. Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (orig. proceeding). This is sometimes referred to as the "mirror-image" rule. *See Washington Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 776 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Save Our Springs*, 198 S.W.3d at 318.

The mirror-image rule is not, however, without limitations. "Once a plaintiff claims relief under the Declaratory Judgments Act, the mirror-image rule does not prohibit the trial court from awarding attorney's fees even if the defendant's counterclaim for declaratory relief only duplicates the claims already raised." *Save Our Springs*, 198 S.W.3d at 318. The rationale is that, because a court may award attorney's fees to either party under the Act, "a defendant that raises a mirror-image counterclaim in response to the plaintiff's declaratory-judgment claim cannot be said to have raised the counterclaim solely to pave the way for an award of otherwise-impermissible attorney's fees." *Washington Square*, 418 S.W.3d at 776; *see Castille v. Serv. Datsun, Inc.*, No. 01-16-00082-CV, 2017 WL 3910918, at *11 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, no pet.) (mem. op.).

20

Appellants in the case before us invoked the Act and sought to recover attorney's fees under that Act in each of its petitions, including the live petition at the time of the summary judgment hearing. Appellants also sought declaratory relief and attorney's fees in their motion for summary judgment. It appears from the record that Appellants did not take the position that their claim is not one for declaratory relief, and that attorney's fees are not available, until after the trial court issued its adverse summary judgment rulings.

Endeavor asserted its counterclaim for declaratory relief in response to Appellants' First Amended Original Petition for Declaratory Judgment. Because Appellants had already invoked the Act, it cannot be said that Endeavor asserted its counterclaim "solely to pave the way for an award of otherwise-impermissible attorney's fees." *Washington Square*, 418 S.W.3d at 776; *Castille*, 2017 WL 3910918, at *11. As a result, even if Endeavor's counterclaim for declaratory relief simply mirrored the claims already raised, its claim for attorney's fees would not be barred. *See Save Our Springs*, 198 S.W.3d at 318.

Endeavor's claim for attorney's fees is also supported by the principle that "a declaratory judgment counterclaim [is allowed when it] has greater ramifications than the original suit[.]" *BHP Petro.*, 800 S.W.2d at 842. Such is the case when a defensive declaratory judgment presents issues beyond those raised by the plaintiff (*i.e.*, does more than simply mirror the plaintiff's claims). *Id.* at 841. The pleadings here show that Endeavor's counterclaim presented an issue beyond those raised by Appellants.

Regardless of how their claims are characterized, the foundation of Appellants' lawsuit is the contention that the PSA is unenforceable because Endeavor did not sign and deliver it to them at or before a formal closing. In responding, Endeavor counterclaimed for a mirror-image

declaration that the PSA is valid and enforceable. But it also requested a declaration that the terms of the agreement provided for a total purchase price of $200,000. As discussed above, Appellants had previously rejected Endeavor's tender of $200,000 on the ground that the purchase price was actually $200,000 each. While Appellants then attempted to accept a second tender of that amount, they later rejected a third tender of the same amount.

The Act provides that "[a] person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004. Appellants' conduct brought into question the purchase price required by the PSA and so warranted construction of that contractual term by means of a declaratory judgment. *See id.* Endeavor's request to construe this term presented an issue beyond those raised by Appellants, which related only to the validity and enforceability of the PSA. Had the court simply denied Appellants' claims, the issue surrounding the purchase price would have remained unresolved and subject to further dispute.[6] We conclude, then, that Endeavor's declaratory judgment counterclaim was properly allowed and supports a grant of attorney's fees because it had "greater ramifications" than Appellants' original suit. *See BHP Petro.*, 800 S.W.2d at 842; *see also First City Nat. Bank of Midland v. Concord Oil Co.*, 808 S.W.2d 133, 138 (Tex. App.—El Paso 1991, no writ) (upholding fee award because defendant sought declaratory relief different than that sought by plaintiff).

In sum, we conclude that the trial court did not abuse its discretion by awarding Endeavor its attorney's fees. Accordingly, Appellants' second issue is overruled.

---

[6] Even on appeal, Appellants refer to the purchase price dispute as being unresolved.

## III. CONCLUSION

We conclude that Appellants have not demonstrated error in the trial court's summary judgment rulings or by its award of attorney's fees to Endeavor. The judgment of the trial court is affirmed.


GINA M. PALAFOX, Justice

April 29, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

23